IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ERNEST PAYTON, TOMMY HILL, MARCUS WRIGHT, DAVID UTI, JORGE SANTOYO, MAURICE MADKINS, LLEWELLYN LENARD, TONY JOHNSON, JC JOHNSON II, PERISS CRAWFORD, SUNAIR RAMCHANDANI, and JEROME BUCKNER,** Plaintiffs, vs. **UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,** Defendant. | Case No.: 1:24-cv-00153 **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, Ernest Payton, Tommy Hill, Marcus Wright, David Uti, Jorge Santoyo, Maurice Madkins, Llewellyn Lenard, Tony Johnson, JC Johnson II, Periss Crawford, Sunair Ramchandani, and Jerome Buckner (collectively "Plaintiffs"), through counsel, for their Complaint against Defendant, Union Pacific Railroad Company ("Defendant"), state as follows:

### NATURE OF THE CASE

1. This is an action to recover statutory liquidated damages and for injunctive relief arising out of Defendant's unlawful collection, receipt, use, possession, retention and disclosure of the personal biometric identifiers and biometric information of Plaintiffs in violation of the Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1 (2008).

### THE PARTIES

2. Each Plaintiff is a natural person and a resident and citizen of the state of Illinois.

3. Defendant is a Delaware corporation that has its principal place of business in the State of Nebraska.

4. Defendant is registered with the Illinois Secretary of State and conducts business in the State of Illinois.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds $75,000.00[1] exclusive of punitive damages, and/or interest and costs, and is between citizens of different States.

6. Each Plaintiff has worked as a truck driver in Illinois and is a citizen of Illinois.

7. Defendant is a railroad company and a Delaware corporation with its principal place of business located in the State of Nebraska.

8. This Court has personal jurisdiction over Defendant because it conducts substantial business in the State of Illinois.

9. Venue lies in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District and Defendant can be found in this District.

## RELEVANT FACTS

10. BIPA was enacted in 2008 for the purpose of addressing a "very serious need for protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Session No. 276.

11. Biometrics are unlike other unique identifiers used to access finances or other sensitive information. "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the

---

[1] Plaintiffs seek statutory, liquidated damages of $1,000 for each negligent violation of BIPA and $5,000 for each intentional or reckless violation of BIPA.

individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 ILCS § 14/5(c).

12. For purposes of BIPA, a "biometric identifier" is a personal feature that is unique to an individual and specifically includes fingerprints or a scan of hand geometry. 740 ILCS § 14/10.

13. BIPA defines "biometric information" as "any information, regardless of how it is captured, converted, stored, or shared, based upon an individual's biometric identifier used to identify the individual." *Id.*

14. Union Pacific Railroad Company is a railroad company.

15. An intermodal terminal is a railyard terminal where cargo is transferred from one mode of transport to another, such as transferring a cargo container from a truck to a train and vice versa.

16. Defendant operates several intermodal railyards in the State of Illinois, including railyards at the following locations:

    a. Global 2 Intermodal Terminal located at 301 W. Lake Street, Northlake, IL 60164;

    b. Global 4 Intermodal Terminal located at 3000 Centerpoint Way, Joliet, IL 60436; and,

    c. Yard Center Intermodal Terminal located at 147th & Indiana, Dolton, IL 60419.

17. Defendant requires truck drivers who visit its intermodal facilities to scan their "biometric identifiers" or "biometric information" in the form of fingerprints into identity verification kiosks upon entry and departure (the "Biometric Tracking System") in order to efficiently track and process their loads through its facilities.

18. Each truck driver is first required to enroll into the Biometric Tracking System, by providing a scan of their "biometric identifiers" so that a digital copy or mathematical template "based on" their "biometric identifiers" (i.e. "biometric information") can be stored on a database.

19. The database contains a copy of each user's "biometric information," and their associated identity information.

20. Once a user is enrolled, each time they use the Biometric Tracking System upon entry and departure, their biometrics are scanned, analyzed, or otherwise converted into digital information that is transmitted to and compared with the database to find a matching copy or template.

21. Each time a truck driver uses the Biometric Tracking System, their biometric information is disseminated, disclosed, and/or redisclosed to a third-party that manages the database for purposes of verification and identification.

22. Once a match is found, the user is identified and authenticated, and the time of the scan is recorded.

23. Defendant's website states that its "Intermodal terminals feature state-of-the-art technology to limit truck idling time. Driver scanning technology allows a truck to enter our facilities faster than ever, cutting each truck's processing time from several minutes to as little as 60 seconds." [2]

24. BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information unless the private entity: (1) informs that person in writing that identifiers and information will be collected and/or stored; (2) informs the person in writing of the specific purpose and length for which the identifiers or

---

[2] https://www.up.com/aboutup/environment/facilities/index.htm# (last accessed 12/14/2023).

information is being collected, stored or used; (3) receives a written release from the person for the collection of that data; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said data. *See* 740 ILCS § 14/15(a) and (b).

25. BIPA also establishes standards for how private entities must handle biometric identifiers and biometric information. *See* 740 ILCS § 14/15(c)-(d). BIPA makes it unlawful for companies to "sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." Furthermore, no company may "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless":

> (1) the person or customer consents to the disclosure or redisclosure;
>
> (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the person or customer;
>
> (3) the disclosure or redisclosure is required by state or federal law or municipal ordinance; or
>
> (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

*See* 740 ILCS § 14/15(c)-(d).

26. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS § 14/10.

27. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. For example, the BIPA does not limit what kinds of biometric data may be obtained, collected, sent, transmitted, or stored. Nor does the BIPA limit to whom biometric data may be obtained, collected, sent, transmitted, or stored. The BIPA simply mandates that entities

wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

28. The Illinois legislature concluded that the increased risk of future harm is a compensable loss under BIPA. *Rosenbach v. Six Flags Entm't Corp.,* 2019 IL 123186, ¶ 35, 129 N.E.3d 1197, 1206 citing 740 ILCS § 14/5(c) (noting increased risk of identity theft should biometrics be compromised); *Dillon v. Evanston Hosp.,* 199 Ill. 2d 483, 507, 771 N.E.2d 357, 372 (2002) (finding risk of future injury compensable as an element of damages in medical malpractice case). The legislature's decision is particularly reasonable given that the statute of limitations on BIPA claims presumably runs from the date of the collection of biometrics, whereas the future injury may not occur until after the statute has run.

29. Plaintiffs seek an award of liquidated damages due to the difficulty in quantifying their harm.

**FACTS SPECIFIC TO THE PLAINTIFFS**

30. While working as truck drivers, Plaintiffs were required to visit various intermodal railyards, including railyards owned and operated by the Defendant to drop off and pick up loads.

31. Each time a Plaintiff visited a railyard operated by the Defendant, the Plaintiffs were required to scan their finger at a kiosk connected to the Defendant's Biometric Tracking System two times; once upon arriving, and once upon leaving.

32. While employed as a truck driver, Plaintiff, Ernest Payton, was required to scan his finger at Defendant's railyards at least 4,000 times.

33. While employed as a truck driver, Plaintiff, Tommy Hill, was required to scan his finger at Defendant's railyards at least 800 times.

34. While employed as a truck driver, Plaintiff, Marcus Wright, was required to scan his finger at Defendant's railyards at least 2,000 times.

35. While employed as a truck driver, Plaintiff, David Uti, was required to scan his finger at Defendant's railyards at least 5,000 times.

36. While employed as a truck driver, Plaintiff, Jorge Santoyo, was required to scan his finger at Defendant's railyards.

37. While employed as a truck driver, Plaintiff, Maurice Madkins, was required to scan his finger at Defendant's railyards at least 100 times.

38. While employed as a truck driver, Plaintiff, Llewellyn Lenard, was required to scan his finger at Defendant's railyards at least 2,000 times.

39. While employed as a truck driver, Plaintiff, Tony Johnson, was required to scan his finger at Defendant's railyards at least 2,000 times.

40. While employed as a truck driver, Plaintiff, JC Johnson II, was required to scan his finger at Defendant's railyards at least 700 times.

41. While employed as a truck driver, Plaintiff, Periss Crawford, was required to scan his finger at Defendant's railyards at least 150 times.

42. While employed as a truck driver, Plaintiff, Sunair Ramchandani, was required to scan his finger at Defendant's railyards at least 400 times.

43. While employed as a truck driver, Plaintiff, Jerome Buckner, was required to scan his finger at Defendant's railyards at least 750 times.

44. Defendant's Biometric Tracking System used, collected, and stored a scan of each Plaintiff's fingerprint or hand geometry.

45. Alternatively, Defendant's Biometric Tracking System used, collected, and stored an encrypted mathematical representation of each Plaintiff's fingerprint or hand geometry.

46. In either event, Defendant's Biometric Tracking System used, collected, and stored unique "biometric identifiers" and "biometric information," as both terms are defined in BIPA, that belong to the Plaintiffs.

47. Defendant never informed Plaintiffs of the specific limited purpose or length of time for which the Defendants collected, stored, or used their "biometric identifier" or "biometric information."

48. Similarly, Defendant never informed Plaintiffs of any biometric data retention policy it developed, nor whether it will ever permanently delete their "biometric information."

49. Defendant did not have a data retention policy at the time it collected the Plaintiffs' "biometric information."

50. Defendant did not comply with any data retention policy regarding its use of Plaintiffs' "biometric information."

51. Defendant did not delete Plaintiffs' "biometric information" after the initial purpose of collecting same, i.e. tracking, verification, and authentication, had been satisfied.

52. Plaintiffs never signed a written release allowing Defendant to collect, capture, or otherwise obtain their "biometric information."

53. Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendant's repeated violations of the BIPA alleged herein.

54. This lawsuit is Plaintiffs' one and only chance to obtain compensation for Defendant's violations of BIPA. Depending on how technology evolves years into the future,

losing control of and ownership over very personal identifiers could have untold harmful consequences.

## COUNT I

**Violations of the Illinois Biometric Information Privacy Act, 740 ILCS § 14/1, et seq.**

55. Plaintiffs restate paragraphs 1 through 54 of the complaint as if set out here in full.

56. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention - and, importantly, deletion - policy. Specifically, these companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 15(a).

57. Defendant failed to comply with these BIPA mandates.

58. Defendant is a non-governmental entity registered to do business in Illinois and is a "private entity" under BIPA. *See* 740 ILCS § 14/10.

59. Plaintiffs are each an individual who had "biometric identifiers" (in the form of fingerprints) collected by Defendant. *See* 740 ILCS § 14/10.

60. Plaintiffs' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

61. Defendant failed to provide a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 15(a).

62. Defendant failed to make any written policy establishing a retention schedule and guidelines for permanent deletion of biometric data publicly available.

63. Defendant lacks retention schedules and guidelines for permanently destroying Plaintiffs' biometric data when the purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

64. Plaintiffs have never seen, been able to access, or ever informed of any publicly available biometric data retention policy or guidelines developed by Defendant, nor have they ever seen, been able to access, or ever informed of whether Defendant would ever permanently delete their biometric data.

65. Defendant knew, or was reckless in not knowing, that the Biometric Tracking System it used would be subject to the provisions of BIPA, a law in effect since 2008, yet has completely failed to comply with Section 15(a) of BIPA, or otherwise intentionally or recklessly failed to comply with Section 15(a) of BIPA.

66. Alternatively, Defendant negligently failed to comply with Section 15(a) of BIPA by failing to adhere to the reasonable standard of care in its industry with respect to biometric information and the mandates of Section 15(a) of BIPA.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court provide each Plaintiff with the following relief:

  a. Declaring that Defendant violated Section 15(a) of BIPA;

  b. Requiring Defendant to comply with BIPA's requirements for the collection, otherwise obtainment, storage, use, and dissemination of biometric identifiers and biometric information as described herein;

  c. Requiring Defendant to destroy biometric identifiers or biometric information pursuant to and in compliance with Section 15(a) of BIPA;

  d. Awarding liquidated damages of $1,000 for *each* negligent violation of Section 15(a) of BIPA pursuant to 740 ILCS § 14/20(1);

  e. Awarding liquidated damages of $5,000 for *each* intentional and/or reckless violation of Section 15(a) of BIPA pursuant to 740 ILCS § 14/20(2);

    f.   Awarding reasonable attorneys' fees, costs and other litigation expenses pursuant to 740 ILCS § 14/20(3); and

    g.   Enjoining Defendant from further violations of Section 15(a) of BIPA.

## COUNT II

### Violation of § 15(b) of BIPA
### [Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information]

67.    Plaintiffs restate paragraphs 1 through 54 of the complaint as if set out here in full.

68.    BIPA requires companies to obtain informed written consent from its workers before acquiring their biometric data. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS § 14/15(b) (emphasis added).

69.    "A party violates Section 15(b) when it collects, captures, or otherwise obtains a person's biometric information without prior informed consent. This is true the first time an entity scans a fingerprint or otherwise collects biometric information, but it is no less true with each subsequent scan or collection." *Cothron v. White Castle System, Inc.*, 2023 IL 128004 ¶ 24 (internal citation omitted).

70.    Informed consent is the "heart of BIPA*." Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

71. Defendant failed to comply with these BIPA mandates.

72. Defendant is a non-governmental entity registered to do business in Illinois and is a "private entity" under BIPA. *See* 740 ILCS § 14/10.

73. Plaintiffs are each an individual who had "biometric identifiers" (in the form of fingerprints) collected by Defendant. *See* 740 ILCS § 14/10.

74. Plaintiffs' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

75. Defendant collected, captured or otherwise obtained Plaintiffs' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS § 14/15(b)(3).

76. Defendant never informed Plaintiffs in writing that their biometric identifier or biometric information was being collected or stored, or of the specific length of term for which their biometric identifiers and/or biometric information were being collected, stored or used before collecting, storing or using them as required by 740 ILCS § 14/15(b)(1)-(2).

77. Prior to collecting Plaintiffs' biometric identifiers and information, Defendant never obtained a written release authorizing such collection. 740 ILCS § 14/15(b)(3).

78. By collecting, capturing, and otherwise obtaining Plaintiffs' biometric identifiers or information as described herein, Defendant violated Plaintiffs' privacy in their biometric identifiers and information as set forth in BIPA *each time* the Defendant collected, captured, obtained, stored or used Plaintiffs' biometric identifiers or information. *See* 740 ILCS § 14/1, *et seq.*; *Cothron v. White Castle System, Inc*., 2023 IL 128004 ¶ 24. "[T]he plain language of section 15(b) and 15(d) demonstrates that such violations occur with every scan or transmission." *Id.* at ¶ 30.

79. Defendant knew, or was reckless in not knowing, that the Biometric Tracking System would be subject to the provisions of BIPA, a law in effect since 2008, yet completely failed to comply with Section 15(b) of BIPA, or otherwise intentionally or recklessly failed to comply with Section 15(b) of BIPA.

80. Alternatively, Defendant negligently failed to comply with Section 15(b) of BIPA by failing to adhere to the reasonable standard of care in its industry with respect to biometric information and the mandates of Section 15(b) of BIPA.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court provide each Plaintiff with the following relief:

a. Declaring that Defendant violated Section 15(b) of BIPA;

b. Awarding liquidated damages of $1,000 for *each* negligent violation of Section 15(b) of BIPA pursuant to 740 ILCS § 14/20(1);

c. Awarding liquidated damages of $5,000 for *each* intentional and/or reckless violation of Section 15(b) of BIPA pursuant to 740 ILCS § 14/20(2);

d. Awarding reasonable attorneys' fees, costs and other litigation expenses pursuant to 740 ILCS § 14/20(3); and

e. Enjoining Defendant from further violations of Section 15(b) of BIPA.

## COUNT III

**Violation of § 15(d) of BIPA**
**[Disclosure of Biometric Identifiers or Information Without Obtaining Consent]**

81. Plaintiffs restate paragraphs 1 through 54 of the complaint as if set out here in full.

82. BIPA prohibits private entities from disclosing, redisclosing or otherwise disseminating a person's or customer's biometric identifier or biometric information without obtaining consent for that disclosure, redisclosure or dissemination, with limited exceptions, none of which are appliable here. 740 ILCS § 14/15(d).

83. Defendant failed to comply with this BIPA mandate.

84. Defendant is a non-governmental entity registered to do business in Illinois and is a "private entity" under BIPA. *See* 740 ILCS § 14/10.

85. Plaintiffs are each an individual who had "biometric identifiers" (in the form of fingerprints) collected by Defendant, as explained in detail above. *See* 740 ILCS § 14/10.

86. Plaintiffs' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

87. Defendant systematically and automatically collected, captured, or otherwise disseminated each Plaintiff's biometric identifiers and/or biometric information without obtaining the consent required by 740 ILCS § 14/15(d)(1).

88. By utilizing Biometric Tracking System, Defendant systematically and automatically disclosed, redisclosed, or otherwise disseminated biometric identifiers or biometric information of Plaintiffs to at least a third-party database management company employed by the Defendant without first obtaining the Plaintiffs' consent required by 740 ILCS § 14/15(d)(1).

89. By disclosing, redisclosing, or otherwise disseminating Plaintiffs' biometric identifiers and biometric information without their consent as described herein, Defendant violated BIPA *each time* there was a disclosure, redisclosure or dissemination of the Plaintiffs' biometric identifiers in violation of Plaintiffs' rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq*.

90. Defendant knew, or was reckless in not knowing, that the biometric timekeeping systems used would be subject to the provisions of BIPA, a law in effect since 2008, yet completely failed to comply with the statute, or otherwise intentionally or recklessly failed to comply with Section 15(b) of BIPA.

91. Alternatively, Defendant negligently failed to comply with Section 15(d) of BIPA by failing to adhere to the reasonable standard of care in its industry with respect to biometric information and the mandates of Section 15(d) of BIPA.

92. "[T]he plain language of section 15(d) supports the conclusion that a claim accrues upon each transmission of a person's biometric identifier or information without prior informed consent." *White Castle System, Inc.*, 2023 IL 128004 at ¶ 29.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court provide each Plaintiff with the following relief:

a. Declaring that Defendant violated Section 15(d) of BIPA;

b. Awarding liquidated damages of $1,000 for *each* negligent violation of Section 15(d) of BIPA pursuant to 740 ILCS § 14/20(1);

c. Awarding liquidated damages of $5,000 for *each* intentional and/or reckless violation of Section 15(d) of BIPA pursuant to 740 ILCS § 14/20(2);

d. Awarding reasonable attorneys' fees, costs and other litigation expenses pursuant to 740 ILCS § 14/20(3); and

e. Enjoining Defendant from further violations of Section 15(d) of BIPA.

**JURY DEMAND**

Plaintiffs hereby respectfully demand a trial by jury.

*Respectfully submitted,*

ERNEST PAYTON, TOMMY HILL, MARCUS WRIGHT, DAVID UTI, JORGE SANTOYO, MAURICE MADKINS, LLEWELLYN LENARD, TONY JOHNSON, JC JOHNSON II, PERISS CRAWFORD, SUNAIR RAMCHANDANI, and JEROME BUCKNER

*/s/ Majdi Hijazin*
Majdi Hijazin - # 6284879
Adam J. Feuer - # 6307792
Samuel L. Eirinberg - # 6328842
DJC LAW, PLLC
140 S. Dearborn Street, Ste. 1610
Chicago, Illinois 60603
(872) 804-3400
majdi@teamjustice.com
adam@teamjustice.com
sam@teamjustice.com

Nick Wooten
DJC LAW, PLLC
1012 West Anderson Lane
Austin, Texas 78757
(512) 220-1800
nick@teamjustice.com
*Lead Trial Attorney*

*Counsel for Plaintiffs*