IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERNEST PAYTON, TOMMY HILL, MARCUS WRIGHT, DAVID UTI, JORGE SANTOYO, MAURICE MADKINS, LLEWELLYN LENARD, TONY JOHNSON, JC JOHNSON II, PERISS CRAWFORD, SUNAIR RAMCHANDANI, and JEROME BUCKNER,<br><br>    Plaintiffs,<br><br>v.<br><br>UNION PACIFIC RAILROAD COMPANY,<br><br>    Defendant. | Case No. 24-cv-153<br><br>District Judge Jorge L. Alonso<br><br>Magistrate Judge Heather K. McShain |

**DEFENDANT UNION PACIFIC RAILROAD COMPANY'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

Sean M. Berkowitz
Johanna Spellman
Kathryn A. Running
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700

*Counsel for Defendant Union Pacific Railroad Company*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ............................................................................................................1

II. FACTUAL BACKGROUND ..........................................................................................2

    A. Union Pacific's Illinois Intermodal Facilities ......................................................2

    B. Plaintiffs' Claims ..................................................................................................4

    C. Union Pacific Has Long Served As A State And Local Government Contractor ..............................................................................................................4

        1. State And Local Contracts Related To Freight Rail ..................................4

        2. Metra Contracts ..........................................................................................7

    D. Union Pacific Has Long Served As A Federal Government Subcontractor ............7

III. LEGAL STANDARD .......................................................................................................8

IV. ARGUMENT ....................................................................................................................8

    A. Union Pacific Was A State And Local Government Contractor Under Section 25(e) At All Relevant Times ....................................................................9

    B. Union Pacific's State Contracts Bear A Substantive Relationship To Operations At Its Illinois Intermodal Facilities ..................................................12

    C. Even Putting Aside Its Status As A State And Local Government Contractor, Union Pacific Is Exempt As A Federal Subcontractor .......................13

V. CONCLUSION ...............................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................8

*Citizens' Util. Bd. v. Ill. Com. Comm'n*,
   735 N.E.2d 92 (3d Dist. 2000)................................................................................10

*Cothron v. White Castle Sys. Inc.*,
   216 N.E.3d 918 (Ill. 2023)......................................................................................11

*Enriquez v. Navy Pier, Inc.*,
   2022 IL App (1st) 211414-U, *appeal denied*, 201 N.E.3d 582 (Ill. 2023) ...............8, 9, 10, 13

*Hartford Ins. Co. of Midwest v. Am. Auto. Sprinkler Sys., Inc.*,
   201 F.3d 538 (4th Cir. 2000) ..................................................................................13

*Ind. Harbor Belt R. Co. v. Am. Cyanamid Co.*,
   916 F.2d 1174 (7th Cir. 1990) ..................................................................................3

*Khan v. Deutsche Bank AG*,
   978 N.E.2d 1020 (Ill. 2012)....................................................................................11

*Lucas v. CTA*,
   367 F.3d 714 (7th Cir. 2004) ....................................................................................8

*McHenry Cnty. v. Raoul*,
   44 F.4th 581 (7th Cir. 2022) ...................................................................................14

*MCI WorldCom Commc'ns, Inc. v. Metra Commuter Rail Div. of RTA*,
   786 N.E.2d 621 (2003)...........................................................................................10

*Miranda v. Pexco, LLC*,
   No. 2021-CH-02127 (Ill. Cir. Ct. Sept. 11, 2023) ............................................10, 11

*Moss v. Martin*,
   473 F.3d 694 (7th Cir. 2007) ..................................................................................10

*Norfolk S. Ry. Co. v. Kirby*,
   543 U.S. 14 (2004)....................................................................................................2

*Tillman v. Pritzker*,
   183 N.E.3d 94 (Ill. 2021)..........................................................................................9

*Union Pacific v. RTA*,
    2021 WL 4318106 (N.D. Ill. 2021) ...................................................................................7

*United States v. Washington*,
    596 U.S. 832 (2022) ..............................................................................................13, 14

*Washington v. United States*,
    460 U.S. 536 (1983) ........................................................................................................14

## STATUTES

30 ILCS 805/3(a) ...............................................................................................................10

740 ILCS 14/25(e) ........................................................................................8, 9, 10, 13

## RULES

Fed. R. Civ. Proc.56(a) ........................................................................................................8

Local Rule 56.1(a)(2) ...........................................................................................................2

## REGULATIONS

23 C.F.R. § 646.210(b)(1) ...................................................................................................5

## OTHER AUTHORITIES

*Contractor*, Black's Law Dictionary (11th ed. 2019) ........................................................9

Pursuant to Federal Rule of Civil Procedure 56(a), Defendant Union Pacific Railroad Company ("Union Pacific") respectfully moves for summary judgment on Plaintiffs' claims.

## I. INTRODUCTION

Plaintiffs allege that Union Pacific violated the Illinois Biometric Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA" or the "Act"), by collecting, using, and disclosing their biometric identifiers and information without their informed consent. Section 25(e) of BIPA provides that the Act does not "apply to a contractor [or] subcontractor … of a State agency or local unit of government when working for that State agency or local unit of government." *Id.* 14/25(e). Union Pacific is entitled to summary judgment because it falls within the scope of Section 25(e).

Union Pacific owns and operates an extensive rail network of over 2,300 miles of track throughout Illinois, with particular concentration in Chicago—the busiest rail hub in the country. Union Pacific's network serves both freight and commuter trains and connects Illinois to the national rail network. The individual components of Union Pacific's network, like those of any network, are interconnected such that a disruption on one part has a ripple effect on other parts. For example, an accident at a road crossing stops all trains on that line, causing delays and inefficiencies throughout the network, including in railyards along that line.

To maintain a fluid rail network, Union Pacific regularly contracts with Illinois state and local government entities concerning rail infrastructure throughout the state, and Union Pacific was "working for" those entities as a "contractor" at all times pertinent to this case. For the Chicago area specifically, Union Pacific actively participates in the Chicago Region Environmental and Transportation Efficiency Program ("CREATE") program, a public-private partnership designed to improve rail and public infrastructure for the benefit of the public. Union Pacific also contracts directly with METRA, a government agency, to provide commuter operations on the UP North, UP Northwest, and UP West lines. Additionally, Union Pacific

provides transportation services in the capacity of a subcontractor for the federal government at the very intermodal facilities from which Plaintiffs' allegations arise.

In short, Union Pacific is a contractor and subcontractor providing services and working for all levels of government. And because Union Pacific was a government contractor and subcontractor throughout the entire time period covered by Plaintiffs' claims, Section 25(e) excluded Union Pacific from coverage under BIPA. Union Pacific is therefore entitled to summary judgment and the dismissal of Plaintiffs' claims.

## II. FACTUAL BACKGROUND

### A. Union Pacific's Illinois Intermodal Facilities

Union Pacific is a Class I interstate freight railroad that operates intermodal facilities in most major cities in the central and western United States, including in Illinois—specifically, in the greater Chicago metropolitan area.[1] *See* Union Pacific's Local Rule 56.1(a)(2) Statement ("SUMF") ¶ 4.[2] Intermodal rail is critical to the swift and efficient movement of goods in the United States—connecting ports, warehousing distribution centers, logistics parks, manufacturing facilities, consumer-facing retailers, and other critical consumption points for freight.[3] *Id.* at ¶ 6; *see also Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 25 (2004) (intermodal transportation boosts the efficient transportation of goods in commerce). Promoting an efficient and competitive rail intermodal system provides a range of public benefits, including reductions in greenhouse gas

---

[1] A "Class I railroad" is a railroad carrier with annual carrier operating revenues of $900 million or more—a threshold amount set by the Surface Transportation Board. *See* 49 U.S.C. § 20102; 49 C.F.R. § 1201.1-1.

[2] Union Pacific's Chicago-area intermodal facilities are referred to as: Global I, Global II, Global III, and Global IV. *See* SUMF ¶ 49. Global III is no longer in operation.

[3] "Intermodal" refers to the movement of freight in steel containers by a combination of rail and truck movement. *See* SUMF ¶ 5. Union Pacific's Illinois intermodal facilities involve the movement of freight in steel containers between rail and truck. *See id.* ¶¶ 4-5.

emissions, roadway congestion and maintenance, and roadway accidents—all of which can be realized by shifting containerized freight to rail and decreasing traffic on roads. *See* SUMF ¶ 11.[4]

Chicago is the nation's busiest railroad hub, and approximately 25% of all freight trains and 50% of all intermodal trains in the United States pass through the Chicago metropolitan area. *Id*. ¶ 8.[5] Railroads rely on high-velocity, secure intermodal facilities in the Chicago metropolitan area to ensure fluid, on-time, and efficient movement of originating, terminating, and transiting interstate freight. *Id*. ¶ 10. Illinois and Chicago thus plays a significant role in the transport of freight by rail throughout the United States. *Ind. Harbor Belt R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1180 (7th Cir. 1990) ("Chicago is one of the nation's largest railroad hubs.").

Union Pacific's integrated intermodal railroad network is a longstanding piece of Chicago's role in interstate rail transportation. Every day, commercial truck drivers bring shipping containers into Union Pacific's facilities, where they are loaded onto trains and transported to destinations around the country. *See* SUMF ¶ 15. Drivers also pick up shipping containers that arrive via train, loading them onto trucks for further movement. *Id*. ¶ 16.[6] To ensure the safety and security of individuals at its facilities, its physical infrastructure, and its customers' cargo, Union Pacific verifies the identities of commercial truck drivers visiting its intermodal facilities. *Id*. ¶ 17. From Fall of 2013 through 2021, Union Pacific used an automated gate system ("AGS"),

---

[4] Moving a ton of freight by rail rather than truck can lower greenhouse gas emissions by 75 percent, on average. *See* SUMF ¶ 12. Heavy trucks add to roadway congestion and maintenance costs, which is especially important since the annual freight tonnage in Illinois is projected to increase 87 percent by 2050, placing additional needs for competitive rail intermodal transportation to help alleviate greater roadway congestion. *See id*. ¶ 13.

[5] The Chicago metropolitan area rail network handles the movement of 1,300 trains every day, including 500 freight and 760 passenger trains, for a total of 37,500 rail cars. *See* SUMF ¶ 9.

[6] In 2020, Union Pacific's Illinois intermodal facilities handled 228,500, 340,573, and 624,769 containers lifted on or off trains, respectively. *See* SUMF ¶ 49.

3

which used finger scans to verify the identity of drivers seeking to access those facilities. *Id.* ¶ 18.[7] The use of finger scans was intended to promote the efficiency, safety, and security of operations at the intermodal facilities, allowing drivers to access the facilities quickly while accurately verifying they were authorized to be there. *Id.* ¶ 19.

### B. Plaintiffs' Claims

Plaintiffs' claims arise from their alleged use of the AGS system. Plaintiffs are commercial truck drivers who allegedly visited Union Pacific's intermodal facilities to drop off and pick up shipments. *See* Compl. (Dkt. 1) ¶ 30; SUMF ¶ 21. Plaintiffs assert that "[e]ach time [they] visited a railyard operated by" Union Pacific, they were "required to scan their finger at a kiosk connected to [Union Pacific's] Biometric Tracking System." Compl. ¶ 31; SUMF ¶ 21. They further allege that through its use of the AGS system, Union Pacific collected and disclosed their biometric information. *See* Compl. ¶¶ 44-46, 88; SUMF ¶ 22. Plaintiffs claim that in doing so, Union Pacific violated BIPA. *See* Compl. ¶¶ 61, 65-66, 71-80; SUMF ¶ 23. Plaintiffs seek "liquidated damages of $1,000 for each negligent violation" and "liquidated damages of $5,000 for each intentional and/or reckless violation." *See* Compl. ¶¶ 66(d)-(e), 80(b)-(c), 92(b)-(c); SUMF ¶ 24.

### C. Union Pacific Has Long Served As A State And Local Government Contractor

Union Pacific has long been a state and local government contractor, including from Fall 2013, when it began using finger scan technology at its Illinois intermodal facilities, through the present.

#### 1. State And Local Contracts Related To Freight Rail

Because the Chicago metropolitan area plays such a critical role in the nation's rail freight

---

[7] The use of finger scans for driver verification at Union Pacific's Illinois intermodal facilities ended by the end of 2021 and the AGS system was decommissioned in 2023. *See* SUMF ¶ 20.

4

transportation network, since 2003, the State of Illinois, various local units of government, and Union Pacific (along with other Class I railroads) have participated in a public-private partnership called the CREATE program. *See* SUMF ¶ 25. CREATE is a $4.6 billion program comprising 70 rail improvement projects designed to increase rail capacity, improve connections between rail lines, and benefit the communities through which the lines run. *Id.* ¶ 26. The program has reduced the amount of time it takes an intermodal train to pass through the region by approximately one-third, from approximately 48 hours to 32 hours. *Id.* ¶ 27. In February 2011, May 2015, September 2022, and August 2024, for instance, Union Pacific entered into separate contracts with the Illinois Department of Transportation ("IDOT") to support various CREATE projects. *Id*. ¶¶ 28-31. Specifically, Union Pacific agreed to provide track and signal construction work, design work related to bridges, engineering services, and services relating to track work, signaling systems, and safety enhancements throughout the Chicago area. *Id.* Union Pacific's work under most of these contracts remains ongoing. *See id*.

Union Pacific has entered other state and local government contracts that improve the safety and efficiency of freight rail in Illinois. In particular, it has contracted with state agencies and local governments to improve rail crossings over Union Pacific's tracks at various locations in Illinois, which help to ensure the rail network operates efficiently, including for the intermodal terminals, and for the benefit of the public. *See* 23 C.F.R. § 646.210(b)(1) ("Projects for grade crossing improvements are deemed to be of no ascertainable net benefit to the railroads and there shall be no required railroad share of the costs."). For example, Union Pacific entered a June 7, 2013 contract with the Illinois Commerce Commission ("ICC"), the Union County Highway Department, and IDOT relating to safety improvements at a highway-rail grade crossing near Mill Creek, Illinois. *See* SUMF ¶ 32. Under the contract, Union Pacific agreed to install automatic

flashing light signals and gates with bells. *Id.* Union Pacific performed the contracted work, which was completed in approximately April 2014. *Id.* Union Pacific also entered a May 14, 2014 contract with IDOT to improve crossing warning signal devices at Union Pacific tracks in St. Elmo, Illinois. *Id.* ¶ 33. Under the contract, Union Pacific agreed to remove the existing crossing, raise the track to meet the proposed highway grade, and install a new crossing. *Id.* Union Pacific performed the contracted work, which was completed in approximately April 2016. *Id.* Union Pacific has performed work under similar contracts in Chicago and across Illinois from 2013 through present. *See id*. ¶¶ 32-41.

The work Union Pacific performed—and continues to perform—under these contracts is important to ensuring railroad infrastructure and adjacent roadways are safe and well maintained, and to improving the efficiency of rail freight flows. *Id*. ¶ 42. Rail networks are highly interdependent such that disruptions on one part of the network can have a significant impact on delays and disruptions across the entire service geography, including impacting other railroads. *Id*. ¶ 43. Failure to maintain a railroad crossing can result in trains moving at slower speeds or lead to accidents, which can bring traffic on the line to a halt. *Id*. ¶ 44. Whenever a train is stopped, especially in a network as dense as the Chicago area, that stoppage can have ripple effects on the flow of freight, preventing trains from arriving at and departing on time and delaying customer shipments to and from intermodal facilities, including Union Pacific's Illinois intermodal facilities. *Id*. ¶ 45. Moreover, an accident at a road crossing stops all trains, commuter and freight, on that line and causes delays and inefficiencies through the network. *Id*. ¶ 46. When trains are delayed en route and cannot arrive at or depart from intermodal facilities near their scheduled time, it takes a significant amount of time to return to normal operations. *Id*. ¶ 50. Railroads must minimize unplanned delays and stoppages, especially for intermodal trains upon which shippers and truck

6

drivers rely for a steady flow of intermodal containers. *Id.* ¶ 47.

Decreases in efficient rail operations also jeopardize the public benefits associated with shipping containerized freight by rail. *Id*. ¶¶ 11, 14, 42. The work Union Pacific performed under its state and local contracts helped prevent disruptions to the rail system that could have adversely impacted the efficient flow of freight through its intermodal facilities and broader network. *Id.* ¶ 52. Thus, all of Union Pacific's state and local government contractor projects contributed to CREATE's mission to "increase the efficiency, capacity and safety of the region's railroad infrastructure." *Id.* ¶ 53.

### 2. Metra Contracts

Metra is a municipal corporation that provides commuter services to and from Chicago. *See Union Pacific v. RTA*, 2021 WL 4318106, *1 (N.D. Ill. 2021) (Alonso, J.). Union Pacific operates commuter passenger service on three rail lines—the UP North, UP Northwest, and UP West lines—as a contractor for Metra. *See* SUMF ¶¶ 54-55. Union Pacific employees operate and maintain the commuter trains for Metra and perform administrative functions, such as selling tickets and collecting fares. *Id.* ¶ 55. Union Pacific's contract with Metra pre-dates the introduction of finger scan technology at Union Pacific's Illinois intermodal facilities in Fall 2013 and continues to this day. *Id.* ¶ 56. The rail lines used for Metra's commuter service are the same rail lines that bring freight in and out of Union Pacific's Chicago intermodal terminals. *Id.* Union Pacific's relationship with Metra is common knowledge throughout the Chicago metropolitan area.

### D. Union Pacific Has Long Served As A Federal Government Subcontractor

Union Pacific transports federal shipments for the U.S. Department of Defense ("DOD"), the United States Postal Service ("USPS"), and other federal agencies. *See* SUMF ¶¶ 58. Union Pacific has transported goods for DOD, USPS, and other federal agencies as a subcontractor for other shipping entities. *Id.* Those shipments regularly passed through Union Pacific's intermodal

facilities in the Chicago area—the same intermodal facilities where Union Pacific used the finger scanning technology at issue here. *Id.* ¶¶ 58-59.

### III.   LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It falls on the nonmovant to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Conclusory statements ungrounded in specific facts do not avoid summary judgment. *Id.* at 256; *see also Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004).

### IV.   ARGUMENT

As noted, Section 25(e) of BIPA states: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). Thus, as the Appellate Court of Illinois observed, Section 25(e) "explicitly exempts government contractors" from liability under BIPA. *Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U, ¶ 6, *appeal denied*, 201 N.E.3d 582 (Ill. 2023).

Union Pacific falls within the Section 25(e) exemption as it has been a state and local government contractor since it began using the AGS system in 2013 and through 2021, when it ceased using that system. Throughout that time, Union Pacific has had contracts with Illinois state and local entities to improve rail lines and crossings, all of which ensured the fluidity of the rail network. Union Pacific has also been a contractor providing services to Metra, as well as a federal subcontractor for DOD and other federal agencies. Because Union Pacific was a government

8

contractor throughout the period it used the AGS system, it is entitled to summary judgment.[8]

Further, even if the Court were to interpret Section 25(e) as requiring that Union Pacific's government contracts pertain to its Illinois intermodal facilities, those contracts meet that standard. Union Pacific's state and local government contracts contributed to efforts to maintain and improve efficient train operations throughout the Chicago area, including at intermodal terminals like those operated by Union Pacific. As to its work as a federal subcontractor at the intermodal facilities, the goods that Union Pacific transported for DOD and other federal government agencies as a subcontractor passed through the very intermodal facilities at which Union Pacific used the AGS system.

### A. Union Pacific Was A State And Local Government Contractor Under Section 25(e) At All Relevant Times

Union Pacific is exempt under Section 25(e) because, throughout the time it used finger scan technology, it was a "contractor … of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e).

*First*, Union Pacific is a "contractor." The plain meaning of "contractor" is "one who contracts to do work for or supply goods to another." *Contractor*, Black's Law Dictionary (11th ed. 2019); *see also Enriquez*, 2022 IL App (1st) 211414-U, ¶ 20 (citing Black's Law Dictionary); *see Tillman v. Pritzker*, 183 N.E.3d 94, 102 (Ill. 2021) ("The best indicator of legislative intent is the language of the statute, given its plain, ordinary meaning."). Union Pacific was a party to contracts with Illinois state agencies and municipalities pursuant to which it performed work for

---

[8] Union Pacific no longer uses finger scan technology at its Illinois intermodal facilities. *See* SUMF ¶ 20. In arguing that Union Pacific has been a government contractor from 2013 through present, Union Pacific does not waive and expressly preserves all other defenses, including that the applicable statute of limitations bars some or all of Plaintiffs' claims and that the finger scans collected by the AGS system are not biometric identifiers or information under BIPA.

9

those government entities—specifically, operating commuter rail lines, improving railway facilities, providing advice regarding public construction projects, and enhancing crossings used by the traveling public and rail infrastructure throughout Illinois. *See supra* at 4-6; SUMF ¶¶ 25-41, 54-57. Union Pacific thus is a "contractor" under Section 25(e). *See Enriquez*, 2022 IL App (1st) 211414-U, ¶ 22 (because defendant performed services for Metropolitan Pier and Exposition Authority "pursuant to a contract, it is a government contractor within the ordinary meaning of that term."); Transcript of Proceedings, at 21:8-13, *Miranda v. Pexco, LLC*, No. 2021-CH-02127 (Ill. Cir. Ct. Sept. 11, 2023) (Section 25(e) applied where defendant had subcontract with company that was contractor for City of Chicago) (attached as Exh. 8-B to the Declaration of Johanna Spellman ("Spellman Decl.")).

*Second*, Union Pacific's contracts are with state agencies and local units of government. *See* SUMF ¶¶ 30-41, 54-57 (documenting contracts with IDOT, ICC, and Metra). IDOT, the ICC, and Metra are "State or local government agenc[ies]" under Section 25(e). *See* 30 ILCS 805/3(a) ("'Local government' means a municipality, county, township, other unit of local government, school district, or community college district."); *MCI WorldCom Commc'ns, Inc. v. Metra Commuter Rail Div. of RTA*, 786 N.E.2d 621, 624 (2003) (Metra is "a unit of local government"); *Moss v. Martin*, 473 F.3d 694, 697 (7th Cir. 2007) (IDOT is a "department in Illinois' state government"); *Citizens' Util. Bd. v. Ill. Com. Comm'n*, 735 N.E.2d 92, 98 (3d Dist. 2000) (same for ICC).

*Third*, Union Pacific's alleged conduct occurred "when [it was] working for" state and local units of government. *See* 740 ILCS 14/25(e) (providing that BIPA does not apply to contractors "when working for" an agency). From Fall 2013 through 2021, Union Pacific used finger scan technology at its Illinois intermodal facilities to verify drivers' identities when they

10

accessed those facilities. *See supra* 3-4; SUMF ¶ 18. Union Pacific had contracts with Illinois state and local agencies from 2013 through 2021—and, in fact, through the present—and was performing work under those contracts throughout that period. *See supra* 4-7.

This temporal connection between Union Pacific's status as a state and local government contractor, on the one hand, and its alleged BIPA violations, on the other, is sufficient to satisfy the "when working for" requirement of Section 25(e). In *Miranda v. Pexco*, *supra*, the plaintiff claimed that her former employer violated BIPA by using a device that required her to scan her finger upon clocking in and out of work. *See* Complaint, *Miranda v. Pexco, LLC*, No. 2021-CH-02127 (Ill. Cir. Ct. Apr. 30, 2021) (attached as Exh. 8-A to Spellman Decl.). Invoking Section 25(e), the defendant argued that it was exempt from BIPA liability because it was a City of Chicago subcontractor during the time it employed the plaintiff. Transcript of Proceedings, at 4:5-15, *Miranda v. Pexco, LLC*, No. 2021-CH-02127 (Ill. Cir. Ct. Sept. 11, 2023). The plaintiff countered that Section 25(e) did not apply because the defendant's use of the finger scan technology bore no substantive relationship to the defendant's work under the government contract. *Id.* at 7:14-23. The court agreed with the defendant, holding that the proper interpretation of "when working for" in Section 25(e) is a "temporal" one, requiring a court to determine if the defendant was a government contractor or subcontractor during the period coinciding with plaintiff's claims. *Id.* at 21:3-7.

The court's decision in *Miranda* is consistent with the settled principle that statutory terms should be given their "popularly understood meaning[s]." *Khan v. Deutsche Bank AG*, 978 N.E.2d 1020, 1043 (Ill. 2012). The term "when" is, by its very nature, temporal, meaning the time at which something occurs. *See When*, Merriam-Webster (2024) (defining "when" as "at or during the time that"). The Illinois Supreme Court has applied this textual principle in construing BIPA.

11

*See Cothron v. White Castle Sys. Inc.*, 216 N.E.3d 918, 923 (Ill. 2023) ("The best indicator of legislative intent is the statutory language itself, given its plain and ordinary meaning."). Here, because Union Pacific was working as a government contractor throughout the period in which it used the complained-of finger scanning technology (and beyond), Section 25(e) exempts it from BIPA and thus from BIPA liability.

### B. Union Pacific's State Contracts Bear A Substantive Relationship To Operations At Its Illinois Intermodal Facilities

Even if, contrary to *Miranda*, Section 25(e) required a substantive relationship between the defendant's government contracts, on the one hand, and the defendant's conduct that allegedly violates BIPA, on the other, Union Pacific would satisfy that test because its contracts with Illinois state and local agencies bear a substantive relationship with operations at its Illinois intermodal facilities. Union Pacific's May 2015 contract is part of the CREATE program, a multi-billion program to improve the efficient movement of freight throughout the greater Chicago region. *See supra* at 4-5. Its other state and local contracts similarly improved the safety and efficiency of freight along its rail lines in Illinois. *See supra* at 4-7. Inefficiencies, such as slow trains or stoppages resulting from accidents at crossings, affect operations at Union Pacific's intermodal facilities by creating backlogs of containers that can take a significant amount of time to clear. *See* SUMF ¶¶ 43-46. Simply put, trains must run on time, especially intermodal trains upon which truck drivers and shippers rely for delivering a steady flow of intermodal containers. Union Pacific's numerous contracts that improve the efficiency and resilience of the rail network for both freight and commuter service help to allow trains to run on time throughout Illinois.

Accordingly, the work Union Pacific performed under its state and local contracts—designed to improve the safety and, as a result, efficiency of operations on its rail lines in Illinois—promoted efficient operations at the intermodal terminals that Plaintiffs allegedly visited. And

12

while nothing more need be said to establish a substantive relationship between those contracts and Union Pacific's intermodal facilities, the finger scanning technology used at those facilities was also intended to serve that same goal by improving the efficiency of driver access to those intermodal facilities. *See supra* at 3-4; SUMF ¶ 19. Accordingly, Union Pacific meets the substantive relationship test that the *Miranda* plaintiff urged and the *Miranda* court rejected.

### C. Even Putting Aside Its Status As A State And Local Government Contractor, Union Pacific Is Exempt As A Federal Subcontractor

Union Pacific is also exempt under Section 25(e) because it is a federal government "subcontractor." 740 ILCS 14/25(e). By transporting goods for DOD, USPS, and other federal agencies, Union Pacific serves as a subcontractor for the federal government. Union Pacific has regularly transported federal shipments through its intermodal terminals in the Chicago area, as documented in Union Pacific's records. SUMF ¶¶ 58-59; *see supra* at 7-8. Union Pacific's shipment of goods for federal agencies makes it a "subcontractor" within the meaning of Section 25(e). *See Enriquez*, 2022 IL App (1st) 211414-U, ¶ 20 (a contractor includes "a person or company that agrees to do work or provide goods for another company"); *Hartford Ins. Co. of Midwest v. Am. Auto. Sprinkler Sys., Inc.*, 201 F.3d 538, 541 (4th Cir. 2000) (explaining that "the statutory term 'contractor' encompasses subcontractors and describing "subcontractors" as "responsible for only a portion of a job" (citation omitted)). And there can be no doubt that Union Pacific's federal subcontracts satisfy Section 25(e), whether it imposes a temporal or a substantive standard.

Plaintiffs likely will respond that Section 25(e) expressly references only state and local units of government. However, the Supremacy Clause of the U.S. Constitution (Article IV, Clause 2) precludes interpreting BIPA's government contractor exemption to include state and local contractors while excluding federal government contractors. Specifically, the "intergovernmental

13

immunity doctrine" bars state laws that "discriminat[e] against the Federal Government or those with whom it deals (*e.g.*, contractors)." *United States v. Washington*, 596 U.S. 832, 838 (2022) (quotations and citation omitted). And "a state law discriminates against the Federal Government or its contractors if it singles them out for less favorable treatment." *Id.* at 839 (quotations and alterations omitted) (quoting *Washington v. United States*, 460 U.S. 536, 546 (1983)).

Thus, under the intergovernmental immunity doctrine, Illinois may not apply BIPA's substantive requirements to federal subcontractors while exempting state and local subcontractors. Such a scheme would impermissibly single out federal subcontractors "for less favorable treatment" and would not "impose … costs in a neutral, nondiscriminatory way." *McHenry Cnty. v. Raoul*, 44 F.4th 581, 593 (7th Cir. 2022) (quotations and citations omitted). To remedy the constitutional flaw in Section 25(e), it must be interpreted to apply with equal force to federal government subcontractors. *See Washington*, 596 U.S. at 838.

As set forth above, Section 25(e) applies because Union Pacific works as a federal government subcontractor. *See supra* at 7-8; SUMF ¶ 58. And even if this Court were to disagree with *Miranda* and hold that Section 25(e) requires a substantive relationship between Union Pacific's work as a federal subcontractor and the operations at its Illinois intermodal facilities, Union Pacific passes that test because the goods that it transported as a subcontractor for DOD, USPS, and other federal agencies passed through the intermodal facilities at issue in this case.

Accordingly, Union Pacific's status as a federal government subcontractor entitles it to summary judgment for any claims arising during or after 2019.

## V. CONCLUSION

This Court should grant summary judgment to Union Pacific and dismiss this lawsuit with prejudice.

14

Dated: February 10, 2025　　　　　　　　Respectfully submitted,

/s/ *Johanna Spellman*
Johanna Spellman, One of the Attorneys for
Defendant Union Pacific Railroad Company

Sean M. Berkowitz (Illinois Bar No. 6209701)
　sean.berkowitz@lw.com
Johanna Spellman (Illinois Bar No. 6293851)
　johanna.spellman@lw.com
Kathryn A. Running (Illinois Bar No. 6330369)
　kathryn.running@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

*Counsel for Defendant Union Pacific Railroad Company*

**CERTIFICATE OF SERVICE**

      I, Johanna Spellman, hereby certify that on February 10, 2025, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which provides service to all counsel of record.


Dated:  February 10, 2025                 */s/ Johanna Spellman*
                                                              Johanna Spellman