**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ERNEST PAYTON, TOMMY HILL, MARCUS WRIGHT, DAVID UTI, JORGE SANTOYO, MAURICE MADKINS, LLEWELLYN LENARD, TONY JOHNSON, JC JOHNSON II, PERISS CRAWFORD, SUNAIR RAMCHANDANI, and JEROME BUCKNER,** | Case No.: 1:24-cv-00153 |
| Plaintiffs, | |
| vs. | Honorable Jorge L. Alonso |
| | Magistrate Honorable Heather K. McShain |
| **UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,** | |
| Defendant. | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT UNION PACIFIC'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs Ernest Payton, Tommy Hill, Marcus Wright, David Uti, Jorge Santoyo, Maurice Madkins, Llewellyn Lenard, Tony Johnson, JC Johnson II, Periss Crawford, Sunair Ramchandani, and Jerome Buckner, respectfully file this Opposition to Defendant Union Pacific's Motion for Summary Judgment ("Motion").

## I.      INTRODUCTION

Defendant's Motion asserts that, "[i]n short, Union Pacific is a contractor and subcontractor providing services and working for all levels of government [a]nd because Union Pacific was a government contractor and subcontractor throughout the entire time period covered by Plaintiffs' claims, Section 25(e) [of the Illinois Biometric Information Privacy Act ('BIPA')] excluded Union Pacific from coverage under BIPA." Motion at 2. Defendant filed its Motion before fact discovery had closed and prior to the resolution of Defendant's contested objections to Plaintiffs' written discovery and before producing its Rule 30(b)(6) corporate designee and employee witnesses for

their noticed depositions. *See* Declaration of David Bizar pursuant to Rule 56(d) of the Federal Rules of Civil Procedure ("Bizar Decl."), at ¶¶ 4-16, filed herewith.[1] To avoid Plaintiffs taking the discovery and the discovery-related motion practice that Plaintiffs needed to litigate to oppose the Motion and to "streamline[] the issues on summary judgment, the parties "stipulate[d]" "[f]or purposes of the Motion for Summary Judgment, only," that "[w]hen Plaintiffs' fingers were scanned at Union Pacific's intermodal facilities, Plaintiffs were not performing work pursuant to the state or local government contracts cited in Union Pacific's Motion for Summary Judgment." Joint Motion to Enter an Agreed Briefing Schedule and Stay Discovery Pending Ruling on Union Pacific Railroad Company's Motion for Summary Judgment ("Joint Motion"), Dkt. # 71, at ¶¶ 4-6.[2] This concession is fatal to Defendant's Motion. As will be demonstrated below, Section 25(e) is inapplicable because Union Pacific admittedly was not working under a government contract or subcontract when it was collecting, using, and distributing Plaintiffs' biometrics data and biometrics information. The Court should deny Defendant's Motion.

## II.     FACTUAL BACKGROUND

### A.  Plaintiffs' claims under the Biometric Information Privacy Act.

This is an action to recover statutory damages and for injunctive relief arising out of the unlawful collection, receipt, use, possession, retention, and disclosure of the personal biometric identifiers and biometric information of Plaintiffs in violation of BIPA, 740 ILCS § 14/1, *et seq*. (2008). The Complaint asserts three counts under BIPA. The first asserts that Defendant failed to

---

[1] As discussed below, the Bizar Declaration "requests pursuant to Rule 56(d)(3) of the Federal Rules of Civil Procedure that the Court 'issue any other appropriate order' that Plaintiffs' responses in Plaintiffs' [Response to Union Pacific Railroad Company's Local Rule 56.1 Statement of Undisputed Material Facts in Opposition to Motion for Summary Judgment, filed herewith] be deemed admissions for purposes of Defendant's Motion for Summary Judgment only." Bizar Decl. at ¶ 23.

[2] The parties further agreed, *inter alia*, that "[w]ith this stipulation, . . . that additional discovery is not needed for the Court to resolve the Motion." *Id.* at ¶ 5.

institute, maintain, and adhere to a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA in 740 ILCS § 15(a), or to inform Defendant of the existence of one. The second asserts that Defendant obtained and used Plaintiffs' biometric identifiers without first obtaining the written release from each Plaintiff required by BIPA, 740 ILCS § 14/15(b)(3). And the third asserts that Defendant disclosed Plaintiffs' biometric identifiers and biometric information without obtaining each Plaintiffs' informed written consent as required by BIPA, 740 ILCS § 14/15(d)(1).

Within its "Legislative findings; intent" section, BIPA provides that the General Assembly had found the following:

> a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.
>
> (b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.
>
> (c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.
>
> (d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.
>
> (e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.
>
> (f) The full ramifications of biometric technology are not fully known.
>
> (g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

740 ILCS 14/5.

The General Assembly therefore afforded a private right of action to "[a]ny person aggrieved by a violation of this Act" to bring suit "against an offending party . . . for each violation" of BIPA. 740 ILCS 14/20(a). *See Cothron v. White Castle Sys*., 2023 IL 128004 ¶¶ 40-41 (Ill. 2023) (confirming that because "a claim accrues for each scan or transmission of biometric information made in violation of [BIPA]" liquidated damages are potentially available for each scan or transmission); *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 34 (Ill. 2019) (confirming that "[t]he strategy adopted by the General Assembly through the enactment of [BIPA] is to try to head off [] problems before they occur . . . by subjecting private entities who fail to follow the statute's requirements to substantial potential liability, including liquidated damages . . . 'for each violation' of the law whether or not actual damages, beyond violation of the law's provisions, can be shown") (quoting 740 ILCS 14/20).

**B. Defendant's Service as a State and Local Government Contractor.**

Defendant's Motion is notable for what facts its Motion does not include or argue. The Motion does not assert that Plaintiffs were performing any work for Defendant that was related to any of Defendant's government contracts or subcontracts. Defendant does not assert that Defendant was required by any government contract or subcontract to collect Plaintiffs' fingerprints or that its collection of their fingerprint data was related to its fulfillment of any government contracts or subcontracts. And the Motion does not even argue that Defendant was required to collect any employee time pursuant to any government contracts or subcontracts.

Much of Defendant's Motion and nearly all of Defendant's Local Rule 56.1 Statement of Undisputed Facts, Dkt. # 66, rather, seeks to support factually Defendant's assertion that "Union Pacific has long been a state and local government contractor, including from Fall of 2013, when

it began using finger scan technology at its Illinois intermodal facilities, through the present." Motion at 4. As set forth in detail in the Bizar Decl., filed herewith, Plaintiffs have in Plaintiffs' Response to Union Pacific Railroad Company's Local Rule 56.1 Statement of Undisputed Material Facts in Opposition to Motion for Summary Judgment ("Plaintiffs' SOF"), also filed herewith, admitted these assertions by Defendant "[f]or purposes of Defendant's Motion for Summary Judgment only." Plaintiffs have done so for the reasons stated in the Bizar Decl. and have requested in and through the Bizar Decl. that the Court "issue any other appropriate order" under Fed. R. Civ. P. 56(d)(3) that that Plaintiffs' responses in Plaintiffs' SOF Response be deemed admissions for purposes of Defendant's Motion for Summary Judgment only.

## III.    ARGUMENT

## IV.    The government contractor exemption is an affirmative defense for which Defendant bears the burden of proof

The government contractor exemption is an affirmative defense that must be pleaded and proved by the defendant. *Mayhew v. Candid Color Sys., Inc*., 743 F. Supp. 3d 994, 1011 (S.D. Ill. 2024) (citing *Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U, ¶ 6 (Ill. App. Ct. (1st) Sept. 27, 2022) (unpublished), *appeal denied*, 201 N.E. 3d 582 (Ill. 2023)). Defendant accordingly bears the burden of proof. *Gooch v. Young*, 24 F.4th 624, 627 (7th Cir. 2024).

### A.  BIPA only exempts private entities when they are performing work for a State agency or local unit of government.

Defendant seeks on summary judgment to establish that BIPA's government contractor exemption excludes it from BIPA's coverage. *See* Motion at 2.[3] But Defendant fails in its burden

---

[3] There is no dispute that Defendant is a "private entity" under BIPA, which governs "[a] private entity in position of biometric identifiers or biometric information . . . ." 740 ILCS 14/15(a). Under BIPA, the term "'[p]rivate entity means any individual, partnership, corporation, limited liability company, association, or other group, however organized. A private entity does not include a State or local government agency. . . ." 740 ILCS 14/10 (Definitions). Defendant asserts on summary judgment that it "is a Delaware corporation that conducts business in Illinois and is headquartered in Nebraska." Defendant Union Pacific

of proof. The government contractor exemption is that "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government *when working for that State agency or local unit of government*." 740 ILCS 14/25(e) (emphasis added). Defendant provides no evidence that it was performing work for any State agency or local unit of government when it was collecting, capturing, or otherwise obtaining, or disclosing or redisclosing Plaintiff's fingerprint biometric data or biometric information. *See* 740 ILCS 14/15. To the contrary, Defendant concedes that its government contracts had no relationship to its collection of Plaintiffs' fingerprints at its intermodal facilities and pertained to unrelated things like warning signal devices, grade crossings, sharing rails with Metra, and hauling freight for the Department of Defense. Motion at 7. And Defendant has stipulated for the purposes of summary judgment that "[w]hen Plaintiffs' fingers were scanned at Union Pacific's intermodal facilities, Plaintiffs were not performing work pursuant to the state or local government contracts cited in Union Pacific's Motion for Summary Judgment." Joint Motion at ¶ 4.

Defendant's argument, rather, is that the mere existence of *any* government contract between Defendant a government entity—no matter how unrelated to the persons whose biometric data it is capturing and using and what purposes Defendant is capturing and using it for—relieves it from BIPA's coverage entirely. But Defendant's construction of the exemption erases its limiting language, "when working for that State agency or local unit of government." And Defendant's heavy reliance on *Enriquez*, Motion at 8-10, 13, is misplaced. Unlike in this case, the *Enriquez* defendant's "actions that formed the basis of the complaint were within the scope of its work" for the government entity. *Id*. at ¶ 25. Indeed, the plaintiff's claims in *Enriquez* "all stem[med] from

---

Railroad Company's Local Rule 56.1 Statement of Undisputed Facts in Support of its Motion for Summary Judgment, Dkt. # 66 ("SOF"), at ¶ 2. Defendant is, therefore, by its own assertion, a "private entity" and not a State or local government agency, under BIPA.

her employment with [the defendant Navy Pier, Inc.], which employed her as part of its obligation to manage Navy Pier", *id.*, "*exclusively* for civil and charitable purposes . . . for, and lessening the burdens of government related to the operation of the Navy Pier," *id.* at ¶ 8 (emphasis added). The *Enriquez* defendant's entire existence was performing under a government contract, and so the court found that the actions alleged to violate BIPA were "within the scope of its work for the" government agency and thus "concern[ed] actions of a government contractor performed while the contractor was working for the government." *Enriquez* at ¶ 25.

Multiple courts have held that Section 25(e) does not provide the categorical exception urged by Defendant. In *Van Housen v. Amazon.com, Inc.*, No. 1:23-cv-15634 (N.D. Ill. Nov. 6, 2024), the District Court concluded that the defendants did not "plainly fall under the Section 25(e) exemption" because "the Court [was] not yet convinced that the defendants were working for the government when they were operating the" storefront at issue. *Id.*, unpublished Transcript of Hearing at 16:21-17:6, attached hereto as <u>Exhibit A</u>. The court observed that "notably, the retail license agreement in this case is much more limited than the agreement in *Enriquez*, where the defendant actually agreed that it was managing and operating virtually all aspects of Navy pier on behalf of the government entity", distinguishing *Enriquez*. *Id.* at 17:9-13.

The Illinois Circuit Court also distinguished *Enriquez* in *Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588 (Ill. Cir. Ct., Cook Cnty., Law Div., May 29, 2024). It similarly concluded that *Enriquez* is distinguishable because the defendant in *Enriquez* was "solely contracting with the government" and "[i]t did not . . . work[] also with private business. . . . And that is different from [a defendant] who has government contracts and private contracts"). *Id*, unpublished Transcript of Hearing, at 21:8-24, attached hereto as <u>Exhibit B</u>. The *Rojo* court concluded "that if the language of this statute wanted to say that the -- nothing in this Act shall be construed to apply to a contractor,

subcontractor, or agent of a State agency or local unit of government, it could have stopped there. However, the court must consider that phrase when working for that State agency or local unit of government." *Id.* at 24:1-25:2. Because in *Rojo* the defendant had not carried its collection of the plaintiff's biometrics was related to its performance under a government contract or subcontract, the court denied the defendant's 619 motion to dismiss. *Id.* at 24:10-25:2.

And in *Navarette v. Josam* Acquisitions, No. 2019 CH 14368 (Ill. Cir. Ct. Cook Cnty., Chancery Div., Mar. 29, 2021), the court concluded that:

> Section 14/25(e) of BIPA states that the Act does not apply to a government contractor "when working for that state agency or local unit of government." Subsection 14/25(e) does not exclude an employer like the Defendant who only does some work for government via contractual obligations. Instead it appears to limit the scope of a possible recovery for Plaintiff such as in this case who did work for an employer when working on a government contract.

*Id.*, unpublished Transcript of Hearing at 15:10-18 (denying the defendant's motion to dismiss), attached hereto as Exhibit C.

The only court decision known to Plaintiffs' counsel to have gone the other way is one reached in *Miranda v. Pexco, LLC*, No. 2021 CH 02127 (Ill. Cir. Ct., Chancery Div., Aug. 23, 2023), unpublished Transcript of Hearing, attached hereto as Exhibit D. There, the court held that:

> So the key issue here is the phrase "when working for." What does "when working for" mean? And my finding is that that means that it is during he same period of time that plaintiff was working for the defendant. It does not mean while the defendant is actively working on fulfilling the government contract or while plaintiff is working on that contract. It's a temporal question. The question is, was plaintiff working for defendant during the same time that defendant had a government contract and was a government contractor or subcontractor?

> And here, I find that defendant has proven, with an uncontested affidavit . . . that defendant did have a subcontract with the company that was a contractor for the City of Chicago during the time plaintiff worked for Defendant.

> So I am going to grant the motion to dismiss under Section 2-619. . . .

*Id.* at 20:21-22:14.

The court in *Miranda* did not provide any reasoning for its decision, and it has no persuasive force. *Rojo* was decided after *Miranda* and considered and rejected the *Miranda* decision. *See Rojo* Tr. at 12:23-15:4.

### A. BIPA's language is plain and unambiguous

The *Enriquez, Navarette* and *Rojo* decisions are correctly decided and *Miranda* is incorrectly decided. "When determining statutory meaning, the court must give effect to the intent of the legislature, which is discovered through an examination of the plain language of the statute." *Lakeshore Recycling Sys., LLC v. Pollution Control Bd.*, 2025 IL App (3d) 240169, at ¶ 7 (Ill. App. Ct. (3d) 2025) (quoting *Waste Management of Illinois, Inc. v. Pollution Control Board*, 356 Ill. App. 3d 229, 233, 826 N.E.2d 586, (2005)). If the "language is plain and unambiguous, the court may not depart from the plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature." *Id.*

Indeed, "[t]he best indicator of the legislature's intent is the plain language of the statute itself, which must be given its plain and ordinary meaning." *Panda Express, Inc. v. Workers' Comp. Comm'n*, 2025 IL App (4th) 240771WC-U, at ¶ 35 (Ill. App. Ct. (4th) 2025) (citing *Elgin Board of Education School District U-46 v. Illinois Workers' Compensation Comm'n*, 409 Ill. App. 3d 943, 953, 949 N.E.2d 198, 350 Ill. Dec. 710 (2011)). "A court may look to dictionary definitions to derive the plain and ordinary meaning of statutory language." *Id.* (citing *In re Detention of Bailey*, 317 Ill. App. 3d 1072, 1086, 740 N.E.2d 1146, 251 Ill. Dec. 575 (2000)). "The court should give 'words appearing in legislative enactments their common dictionary meaning or commonly accepted use unless otherwise defined by the legislature.'" *Id.* (quoting *Barry v. City of Chicago*, 2021 IL App (1st) 200829, ¶ 23, 458 Ill. Dec. 327, 196 N.E.3d 631) (citing *Cojeunaze Nursing Center v. Lumpkin*, 260 Ill. App. 3d 1024, 1029, 632 N.E.2d 146, 198 Ill. Dec. 87 (1994)) ("In the absence of a statutory definition indicating a different legislative intent, words are to be given their

ordinary and commonly understood meaning."); *People v. Dednam*, 55 Ill. 2d 565, 568, 304 N.E.2d 627 (1973) ("The dictionary can be used as a resource to ascertain the ordinary and popular meaning of words.").

Section 23(e)'s language that "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government" is plain and unambiguous.

The word "when" expressed in the phrase "when working for that State agency or local government" is, grammatically, a subordinating conjunction. *See What is a Subordinating Conjunction? Definitions & Examples*, https://www.thesaurus.com/e/grammar/subordinating-conjunctions/ (providing the sentence "[m]y sister and I go hiking when the weather is nice" as an example of a subordinating conjunction) (last accessed Mar. 6, 2025).[4] A subordinating conjunction "connects clauses of unequal grammatical rank, introducing a clause that is dependent on the independent clause." *Attix v. Carrington Mort. Servcs., LLC*, 35 F. 4th 1284 (11th Cir. 2022) (citing *The Chicago Manual of Style* ¶ 5.201 (17th ed. 2017); *see also Interim Inv. Corp. v. Palatine Service Corp.*, 139 Ill. App. 3d 118, 123, 487 N.E. 2d 15 (Ill. App. Ct. (1st) 1985).

Here, the introductory clause is "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government[.]" And the follow-on phrase is "when working for that State agency or local unit of government." The subordinating conjunction "when" introduces the introductory clause as the dependent clause. By

---

[4] "Subordinating conjunctions link phrases or clauses to other clauses. They are called subordinating conjunctions because they transform the clause they introduce into a dependent clause, a clause subordinate to the independent clause in grammatical structure and importance. Some common subordinating conjunctions are after, although, as, as if, as long as, because, before, despite, even if, even though, if, in order that, rather than, since, so that, that, though, unless, until, when, where, whereas, whether, and while." *The Mayfield Handbook of Technical & Scientific Writing*, § 11.7.3, Massachusetts Institute of Technology, *available at* https://www.mit.edu/course/21/21.guide/cnj-sub.htm (emphasis omitted; underlining added) (last accessed Mar. 6, 2025).

doing so, the common grammar being applied links the clauses in time based on "when". *See What is a Subordinating Conjunction? Definitions & Examples*, *supra* ("Subordinating conjunctions are often used to link clauses that explain relationships based on time.").

This is confirmed by the definitions of the words "when" being used as a conjunction:

<u>Definition of "when" (conjunction)</u>

1      a: at or during the time that : WHILE
went fishing *when* he was a boy

       b: just at the moment that
stop writing *when* the bell rings

       c: at any or every time that
*when* he listens to music, he falls asleep

2.     : in the event that: IF
A contestant is disqualified *when* he disobeys the rules

       * * *

4.     : at the time or occasion at or in which
Tomorrow is *when* we must decide
Humor is *when* you laugh
— Earl Rovit

*Merriam-Webster Dictionary*, available *at* https://www.merriam-webster.com/dictionary/when (last accessed Mar. 6, 2025).[5]

It is also confirmed by the definitions of the word "that" for when as here "that" is being

---

[5] Definition 3 is:

     a: considering that
Why use water at all *when* you can drown in it
—Stuart Chase

     b: in spite of the fact that : ALTHOUGH
quit politics *when* I might have had a great career in it

*Id*. Definition 3 does not appear to potentially apply in this instance.

used as a demonstrative adjective ("when working for *that* State agency or local unit of government"). "Demonstrative adjectives are . . . used to identify or express the relative position of a noun in time or space. A demonstrative adjective comes before all other adjectives in the noun phrase. Some common demonstrative adjectives are this, <u>that</u>, these, and those."

https://www.mit.edu/course/21/21.guide/a-demons.htm (emphasis omitted; underlining added) (last accessed Mar. 6, 2025).

<u>Definition of "that" (adjective)</u>

1      a: being the person, thing, or idea specified, mentioned or understood
        b: being the one specified → usually for emphasis
        c: so great a: SUCH

2.     : the farther away or less immediately under observation or discussion
        This chair or *that* one

*Merriam-Webster Dictionary*, available *at* https://www.merriam-webster.com/dictionary/that (last accessed Feb. 28, 2025).

Thus, in keeping with the above, the provision "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government *when* working for *that* State agency or local unit of government" provides, in plain and unambiguous language, that the contractor exemption applies *at or during the time that/while, or in the event that/if, or at the time or occasion at or in which*, the contractor, subcontractor or agent of a State agency or local unit of government is performing work under a local contract for *the person, thing or idea/government entity, or being the one specified, or for such*, work. If the legislature's intent had instead been to categorically exclude all private entities *who* worked as contractor, subcontractor, or agent of a state agency or local unit of government in any capacity, as opposed to *when* working in such capacity, it would have expressly said so or omitted the limiting phrase it included "when working for that State agency or local government."

-12-

**B. Defendant's construction violates the canon that every part of a statute be given meaning and effect.**

Defendant's construction of Section 25(e) does not introduce an ambiguity because it is not a reasonable construction. Among other things, it violates the canon that in determining the meaning of a statute "[e]ach word, clause and sentence of a statute should be given reasonable meaning and not rendered superfluous." *Chicago Bears Football Club v. Cook County Dep't of Revenue*, 2014 IL App (1st) 122892, 16 N.E.3d 827, ¶ 50 (Ill. App. Ct. (1st) 2014). Specifically, Defendant's construction improperly renders the language of limitation, "when working for that State agency or local unit of government" superfluous or meaningless. *See Schwartz Supply Network, Inc.*, No. 1:23-cv-14319, 2024 U.S. Dist. LEXIS 213002, at *13 (N.D. Ill Nov. 22, 2024) (citing *Bonaguro v. County Officers Electoral Bd.*, 158 Ill. 2d 391, 397 634, N.E. 2d 712 (1994) ("Under Illinois law '[s]tatutes should be construed, if possible, so that no term is rendered superfluous or meaningless.").

Indeed, Defendant's reading of the limiting language to mean that it restricts the time to when the contractor, subcontractor, or agent of a state agency or local unit of government is working for a or some State agency(ies) or local unit(s) of government is circular. It would obtain the same result under the same circumstances with or without Section 23(e)'s limiting language. If Section 23(e) had omitted the limiting phrase "when working for that State agency of local unit of government" and provided only that "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government" government contractors and subcontractors would qualify for the exemption on a categorical basis. And when Section 23(e) includes this language, under Defendant's construction government contractors and subcontractors would still qualify for the exemption on a categorical basis—because when they are not working in any capacity for a State agency or local unit of government they are by definition

not a local government contractor or subcontractor.

### C. Defendant's construction is contrary to legislative intent.

BIPA's language contains no indication that the legislature's intent was to create a complete carve-out for every private entity that benefited the State in any manner by performing some work for Illinois or its subdivisions for not only the work that such private entities were performing for the State, but also for all of the work that such private entities were performing for themselves and for others. BIPA exempts state and local government agencies from its coverage. 740 ILCS 14/10 ("A private entity does not include a State or local government agency." ). The legislature's clearly expressed intent was to afford the same exemption to the private entity contractors and subcontractors of a State or local government agency "when working for that State agency or local unit of government" for such work. *See Bryant v. Compass Group USA, Inc.*, 503 F. Supp. 3d 597, 601 (N.D. Ill. 2020) (explaining that "government agencies have no profit motive to exploit individuals' biometric information, so the perceived dangers associated with the possession of sensitive information are less severe vis-à-vis government agencies and contractors subject to their supervision."); *Haywood v. Flex-N-Gate LLC*, 19 CH 12933, 2021 WL 8368185, at *4 (Ill. Cir. Ct. Apr. 8, 2021).

Nor is there any indication that the legislature's intent in Section 25(e) was, as Defendant would have it, to afford every private entity who provides any work for a State agency or local unit of government, no matter how trivial, a categorical and complete exemption from <u>all</u> of BIPA's coverage for every such private entity's <u>non</u>-government related activities. The language of the exemption provides no indication, for example, that the General Assembly intended that a private entity that had entered into a single local government contract to perform a set of 12 discreet tasks that took 1 minute each and were spaced out monthly over a year period amounting to little to no public benefit or importance thereby becomes categorically exempted from BIPA for all of

-14-

its <u>non</u>-government related activities for the year that has no relation to its government work because of the limited "when working for that State agency or local unit of government" exemption that the legislature included.

Indeed, Defendant's reading runs against the legislative findings and purpose section of BIPA, which includes, *inter alia*, that BIPA was enacted because "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g); *see McDonald v. Symphony Bronzeville Park, LLC*, 2022 IL 126511, ¶ 24 (Ill. 2022); *Rosenbach v. Six Flags Ent't Corp.*, 2019 IL 123186, ¶ 33 (Ill. 2019). The legislature did not extend sovereign immunity to private entities from all of BIPA just because the entities had entered into contracts or subcontracts with state entities to perform some other services for the state's benefit which have nothing to do with the biometrics or biometric information that the private entity is in possession of. To the contrary, the only sensible and grammatically correct reading of the exemption—in keeping with its' plain language—is that the phrase "when working for that State agency or local government" limits the exemption to when the private entity is working for that State agency or local government as a contractor, subcontractor, or agent, for that work.

## V.    CONCLUSION

Wherefore, the Court should deny Defendant's Motion for Summary Judgment and further order under Rule 56(d) of the Federal Rules of Civil Procedure that Plaintiffs' responses in Plaintiffs' SOF Response be deemed admissions for purposes of Defendant's Motion for Summary Judgment only.

Dated: March 7, 2025

*Respectfully submitted,*

ERNEST PAYTON, TOMMY HILL,
MARCUS WRIGHT, DAVID UTI,
JORGE SANTOYO, MAURICE MADKINS,
LLEWELLYN LENARD, TONY JOHNSON,
JC JOHNSON II, PERISS CRAWFORD,
SUNAIR RAMCHANDANI, and
JEROME BUCKNER,

/s/ David Bizar
David Bizar
DJC Law, PLLC
1012 W Anderson Ln
Austin, TX 78757
(512) 220-1800
dbizar@teamjustice.com

Samuel L. Eirinberg
DJC LAW, PLLC
140 S. Dearborn Street, Suite 1610
Chicago, IL 60603
Telephone: 872.804.3400
sam@teamjustice.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2025, I caused a true and correct copy of the foregoing to

be filed with the Court by electronic filing protocols, and that the same will be electronically served

upon all attorneys and parties of record registered with the Court's ECF/CM system.

*/s/ David Bizar*
David Bizar

-16-