IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERNEST PAYTON, TOMMY HILL, MARCUS WRIGHT, DAVID UTI, JORGE SANTOYO, MAURICE MADKINS, LLEWELLYN LENARD, TONY JOHNSON, JC JOHNSON II, PERISS CRAWFORD, SUNAIR RAMCHANDANI, and JEROME BUCKNER, <br><br> Plaintiffs, <br><br> v. <br><br> UNION PACIFIC RAILROAD COMPANY, <br><br> Defendant. | Case No. 24-cv-153 <br><br> District Judge Jorge L. Alonso <br><br> Magistrate Judge Heather K. McShain |

**REPLY IN SUPPORT OF DEFENDANT UNION PACIFIC RAILROAD COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Sean M. Berkowitz
Johanna Spellman
Kathryn A. Running
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700

*Counsel for Defendant Union Pacific Railroad Company*

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................2

    A. Section 25(e) Requires Only A Temporal Nexus Between The Defendant's Status As A Government Contractor And Its Alleged BIPA Violations ..................................................................................................................2

    B. Plaintiffs' Other Arguments For Their Atextual Interpretation of Section 25(e) Lack Merit ..........................................................................................................5

        1. *Caselaw Does Not Support Plaintiffs* ............................................................5

        2. *Grammar Does Not Support Plaintiffs* .........................................................7

        3. *Legislative Intent Does Not Support Plaintiffs* ............................................9

    C. Even If Section 25(e) Required A Substantive Nexus In Addition To A Temporal Nexus, Plaintiffs Concede That Union Pacific's Contracts And Subcontracts Are Related To Operations At Its Intermodal Facilities, Thereby Establishing A Substantive Nexus ............................................................11

III. CONCLUSION ....................................................................................................................13

**TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Atl. Richfield Co. v. Christian*,
   590 U.S. 1 (2020)..................................................................................................................9

*Bonte v. U.S. Bank, N.A.*,
   624 F.3d 461 (7th Cir. 2010) ...............................................................................................12

*Castillo-Hernandez v. Longshore*,
   6 F. Supp. 3d 1198 (D. Colo. 2013)......................................................................................3

*Cothron v. White Castle Sys. Inc.*,
   216 N.E.3d 918 (Ill. 2023)..........................................................................................2, 9, 10

*Coulter v. Hudson Grp., et al.*,
   No. 23 C 16176 (N.D. Ill. Nov. 6, 2024) ...........................................................................5, 6

*Info-Hold, Inc. v. Muzak LLC*,
   783 F.3d 1365 (Fed. Cir. 2005)............................................................................................3

*Johnson v. Indus. Comm'n*,
   289 N.E.2d 627 (Ill. 1972) ....................................................................................................5

*Krohe v. City of Bloomington*,
   789 N.E.2d 1211 (Ill. 2003) ..................................................................................................9

*McDonald v. Symphony Bronzeville Park, LLC*,
   193 N.E.3d 1253 (Ill. 2022) ................................................................................................10

*Miranda v. Pexco, LLC*,
   No. 2021-CH-02127 (Ill. Cir. Ct. Sept. 11, 2023) ..............................................................1, 7

*Navarette v. Josam Acquisitions*,
   No. 2019 CH 14368 (Ill. Cir. Ct. Mar. 29, 2021) ..................................................................7

*Nichols v. Mich. City Plant Plan. Dep't*,
   755 F.3d 594 (7th Cir. 2014) ...........................................................................................1, 12

*Polselli v. IRS*,
   598 U.S. 432 (2023)..............................................................................................................9

*Rojo v. Homer Tree Care, Inc.*,
   No. 23 L 8588 (Ill. Cir. Ct. May 29, 2024)............................................................................6

*Van Housen v. Amazon.com*,
  No. 23 C 15634 (N.D. Ill. Nov. 6, 2024) ...................................................................................5

*Wilbon v. D.F. Bast Co., Inc.*,
  382 N.E.2d 784 (Ill. 1978) ........................................................................................................5

*Wojtas v. Cap. Guardian Trust Co.*,
  477 F.3d 924 (7th Cir. 2007) ..................................................................................................12

**STATUTES**

740 ILCS 14/15 ...................................................................................................................................4

740 ILCS 14/20(b), (c) .....................................................................................................................10

740 ILCS 14/25(e) ..............................................................................................................1, 2, 3, 4

Ill. Public Act 103-0769 ..................................................................................................................10

**OTHER AUTHORITIES**

*When*, The American Heritage Dictionary (2000) ..............................................................................3

*When*, Concise Oxford English Dictionary (2008) ...........................................................................3

*When*, Merriam-Webster (2024) ......................................................................................................2

**I.     INTRODUCTION**

Plaintiffs do not dispute that Union Pacific was a government contractor at the same time—that is, *when*—it collected the finger scans giving rise to their BIPA claims. *See* 740 ILCS 14/25(e) (exempting contractors of State agencies and local units of government "when working for" such entities). Plaintiffs instead attempt to impose extra-statutory requirements found nowhere in BIPA, cite non-binding decisions with little application here, and turn to arguments regarding legislative intent even though Section 25(e)'s plain terms unambiguously govern the undisputed facts here. *See* Dkt. 75 ("Opp") at 5-15. This Court should follow *Miranda v. Pexco*, which is the only Illinois case to fully explain its reasoning regarding the scope of Section 25(e), and which concluded that courts should simply ask whether a plaintiff's biometric information was collected and/or disseminated "*during the same time* that [Union Pacific] had a government contract and was a government contractor or subcontractor?" Transcript of Proceedings, at 21:3-7, *Miranda v. Pexco, LLC*, No. 2021-CH-02127 (Ill. Cir. Ct. Sept. 11, 2023) (Dkt. 68 at 44) (emphasis added). The undisputed answer to that question is yes, and Union Pacific is therefore entitled to summary judgment.

Even if this Court were to find that Section 25(e) requires a substantive (in addition to a temporal) connection between the defendant's government contracts, on the one hand, and its alleged collection of biometric information, on the other, Union Pacific still is entitled to summary judgment. Plaintiffs utterly fail to address Union Pacific's submission that its local and state contracts, along with its federal subcontracts, bear a substantive nexus to operations at the intermodal facilities where Plaintiffs' finger scans were taken. *See* Dkt. 65 ("Mot.") at 12-14. By failing to acknowledge, let alone contest, that submission, Plaintiffs have forfeited any argument to the contrary, effectively conceding that Section 25(e) applies here. *See Nichols v. Mich. City Plant Plan. Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any

arguments that were not raised in its response to the moving party's motion for summary judgment.").

For these reasons and those that follow, the Court should grant summary judgment to Union Pacific.

## II. ARGUMENT

### A. Section 25(e) Requires Only A Temporal Nexus Between The Defendant's Status As A Government Contractor And Its Alleged BIPA Violations

BIPA exempts from coverage any private entity that is "a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). Plaintiffs do not dispute that Union Pacific is, and was at all relevant times, a contractor of state and local governments and a federal government subcontractor. Specifically, Plaintiffs do not (and cannot) dispute that Union Pacific has long maintained contracts with Metra (a local municipal agency) and the Illinois Department of Transportation and the Illinois Commerce Commission (state agencies). Nor do Plaintiffs dispute that Union Pacific is a federal government subcontractor, having handled shipments in its Illinois intermodal facilities on behalf of the Department of Defense ("DOD"), United States Postal Service ("USPS"), and other federal agencies. *See* Mot. at 4-8.

Plaintiffs' failure to contest that Union Pacific was an active government contractor throughout the relevant period resolves this motion in Union Pacific's favor. As the Illinois Supreme Court has made clear—in construing BIPA, no less—"[t]he best indicator of legislative intent is the statutory language itself, given its plain and ordinary meaning." *Cothron v. White Castle Sys. Inc.*, 216 N.E.3d 918, 923 (Ill. 2023). Here, the phrase "when working for" in Section 25(e) simply asks whether, "at or during the time that" a private entity collects alleged biometric information, it served as a government contractor. *When*, Merriam-Webster (2024); *see also*

*When*, Concise Oxford English Dictionary (2008) (defining "when" to include "at or during the time that"); *When*, The American Heritage Dictionary (2000) (defining "when" to include "[d]uring the time at which; while"). The undisputed facts establish that Union Pacific meets that straightforward test.

Caselaw bolsters this commonsense reading. The phrase "when working for" most naturally "mean[s] during a period of time (e.g., she played sports when she was in high school")". *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1373 (Fed. Cir. 2005). Granted, there are situations in which "when" refers to a single "moment of time (e.g., the lights go on when you flip the switch)." *Id.*; *see also Castillo-Hernandez v. Longshore*, 6 F. Supp. 3d 1198, 1218 (D. Colo. 2013) (defining "when … released" to refer to "at the time of release" or "immediately upon release"). But here, Section 25(e)'s reference to the ongoing relationship between a contractor and a local unit of government—"when *working for* that State agency or local unit of government," 740 ILCS 14/25(e) (emphasis added)—naturally refers to a period of time during which the contractor has such a relationship.

Consider the example offered by the Federal Circuit in *Info-Hold*: If a person played sports when she was in high school, no ordinary speaker of the English language would think she played sports only within the physical grounds of the school itself, or only during school hours. Rather, they would think she played sports during the period of life when she was enrolled in high school. That ordinary understanding applies to the text (and context) of Section 25(e). The government contractor exemption shields private parties during the time in which they serve as government contractors. *See Miranda*, No. 2021-CH-02127, Dkt. 68 at 44 (21:4-7) ("The question is, was plaintiff working for defendant during the same time that defendant had a government contract and was a government contractor or subcontractor?").

3

Ignoring this commonsense reading, Plaintiffs invent requirements found nowhere in BIPA's text. They first argue that Union Pacific can be exempt under Section 25(e) only if *Plaintiffs* were performing work related to its government contracts or subcontracts when their finger scans were collected. *See* Opp. at 5-6. But BIPA is targeted at private entities, not individuals. *See* 740 ILCS 14/15 (imposing substantive requirements on "private entit[ies]"). The government contractor exception thus speaks to the relationship between the private entities (the "contractors" or "subcontractors") and the "government." 740 ILCS 14/25(e). Nothing in Section 25(e) suggests that its protection evaporates when a private entity's *individual employees* are not "performing any work … related to" government contracts. *See* Opp. at 4.

A reading of Section 25(e) that turns on the tasks performed by individual employees at discrete moments in time would be logistically unworkable. Take, for example, a truck driver who had his finger scanned when visiting Union Pacific's Illinois intermodal facilities to pick up and drop off cargo. Plaintiffs do not dispute that Union Pacific is a federal government subcontractor that handles federal shipments through those intermodal facilities. *See* Mot. at 13-14; Dkt. 76 ¶¶ 58-61 (admitting facts regarding Union Pacific's federal contracts).[1] Under Plaintiffs' interpretation of Section 25(e), BIPA would apply on visits when that truck driver picked up or dropped off a USPS shipment but not when that same driver picked up or dropped off a private company's shipment. That would make no sense, and misreads the statute because, again, Section 25(e) focuses on the status of private entities, not the individuals who have sued those entities.

Plaintiffs also argue that Union Pacific "does not assert that [it] was *required* by any

---

[1] Nor do Plaintiffs dispute, thus forfeiting any argument in opposition to, Union Pacific's argument that the intergovernmental immunity doctrine requires that Section 25(e) be read to cover federal contractors and subcontractors, in addition to contractors and subcontractors for State agencies and local units of government. *See* Mot. at 13-14.

4

government contract or subcontract to collect Plaintiffs' fingerprints." Opp. at 4 (emphasis added). Here, too, Plaintiffs impose a requirement nowhere found in BIPA. Section 25(e) applies to private entities as a whole—"when working for" government units in a contractor or subcontractor capacity. Section 25(e) could have said: "Nothing in this Act shall be construed to apply to a contractor who collects biometric information in order to fulfill its contracts with a State agency or local unit of government." But it does not say that. "Had the General Assembly" intended to limit Section 25(e) to the circumstances suggested by Plaintiffs, "it would have said so." *Wilbon v. D.F. Bast Co., Inc.*, 382 N.E.2d 784, 790 (Ill. 1978); *see also Johnson v. Indus. Comm'n*, 289 N.E.2d 627, 629 (Ill. 1972) (similar). The General Assembly did not do so, and the statute should be interpreted as written.

      **B.**    **Plaintiffs' Other Arguments For Their Atextual Interpretation of Section 25(e) Lack Merit**

In an attempt to escape Section 25(e)'s plain meaning, Plaintiffs cite caselaw, grammatical rules of construction, and legislative intent. Each of their arguments is unavailing.

           **1.**    *Caselaw Does Not Support Plaintiffs*

Plaintiffs cite three decisions that they claim support their atextual interpretation of Section 25(e). *See* Opp. at 7-8. The first case, *Van Housen*, is inapposite. There, in moving to dismiss the plaintiffs' BIPA claims, the defendants argued "that judicially noticeable documents [a press release] show that the defendants operate their store pursuant to city government contracts." *Van Housen v. Amazon.com*, No. 23 C 15634 (N.D. Ill. Nov. 6, 2024); *Coulter v. Hudson Grp., et al.*, No. 23 C 16176 (N.D. Ill. Nov. 6, 2024) (Dkt. 75-1 at 15).[2] The plaintiffs countered "that defendants are retail tenants that were not working for the government when they collected

---

[2] The oral ruling decided the government contractor issue with respect to both cases, which were called simultaneously and presented common issues. *See* Dkt. 75-1 at 3-4.

5

biometric data." *Id.* The question for the court was whether a "press release," which "reference[d] an agreement" between the defendant and the City of Chicago, was enough to show that the defendant was a local government contractor and therefore exempt under Section 25(e). *Id.* at 16. The court answered no, explaining that, "at this stage of the litigation, based on those documents, the Court will not conclude that defendants plainly fall under the Section 25(e) exemption." *Id.*; *see id.* at 17 ("[T]he Court is not yet convinced that the defendants were working for the government."). *Van Housen*, in short, turned on whether the defendant was a government contractor in the first place, a point that Plaintiffs concede here. The case did not turn on what the phrase "when working for" means.

The second case, *Rojo*, does not help Plaintiffs either. There, in denying a motion to dismiss premised on Section 25(e), the court rejected the temporal nexus test discussed above. *See Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588 (Ill. Cir. Ct. May 29, 2024) (Dkt. 75-2 at 24). But *Rojo* offered just one sentence of reasoning—namely, that the General Assembly need not have included the "when working for" clause in Section 25(e) if the test were purely temporal. *Id.* That argument falters for the reasons set forth below: In enacting Section 25(e), the General Assembly was concerned that without the limiting "when working for" phrase, the government contractor exemption could cover private entities without active or current government contracts. *See infra* at 8-9.

In any event, the *Rojo* court did not distinguish *Miranda v. Pexco*, which reasoned through the question and concluded that the government contractor exemption imposes a purely temporal test. In addressing "[w]hat does 'when working for' mean?", *Miranda* explained that it "means that it is during the same period of time that plaintiff was working for the defendant." No. 2021-CH-02127, Dkt. 68 at 43-44 (20:22-21:1). And *Miranda* flatly rejected the view that the

6

phrase means "while defendant is *actively working* on fulfilling the government contract or *while plaintiff is working* on that contract." *Id.* at 44 (21:1-3) (emphases added). Although *Rojo* and *Miranda* are at odds, *Miranda*'s reasoned explanation offers the only reading faithful to the ordinary meaning of the text enacted by the General Assembly.

Nor does *Navarette v. Josam Acquisitions*, No. 2019 CH 14368 (Ill. Cir. Ct. Mar. 29, 2021) (Dkt. 75-3), show that *Miranda* was "incorrectly decided." Opp. at 9. Plaintiffs barely press the point, likely because *Navarette* is inconclusive. The court there, without reasoning, stated that Section 25(e) "does not exclude an employer like the Defendant who only does some work for government via contractual obligations. Instead it appears to limit the scope of a possible recovery for Plaintiff such as in this case who did work for an employer when working on a government contract." Dkt. 75-3 at 15. *Navarette* included no reasoning regarding the proper construction of "when working for." The most that can be said about *Navarette* is that it offered a murky conclusion without any substantive reasoning, and (unlike here) at an early stage of litigation without a developed factual record.

### 2. *Grammar Does Not Support Plaintiffs*

Plaintiffs' grammatical arguments fare no better. They argue that the word "when," as used in the clause "when working for that Stage agency or local government," is "a subordinating conjunction" such that the first clause ("Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government") is triggered only by the second ("when working for that State agency or local unit of government"). Opp. at 10. And, arguing that the word "that" in Section 25(e) is a "demonstrative adjective," Plaintiffs then proffer the following definition of the government contractor exemption:

> [T]he contractor exemption applies *at or during the time that/while, or in the event that/if, or at the time or occasion at or in which*, the contractor, subcontractor or agent of a State agency or local unit of government is performing

7

> work under a local contract for *the person, thing or idea/government entity, or being the one specified, or for such*, work.

*Id.* at 12.

What Plaintiffs have done, then, is take an 11-word statutory phrase—"when working for that State agency or local unit of government"—and transform it into a 62-word definition that finds no footing in the statutory text. And Plaintiffs' grammatical invention is, in any event, beside the point. Plaintiffs rely on grammatical rules to argue that "when working for" sets up a condition that must be met before BIPA exempts a government contractor. But Union Pacific does not dispute that the phrase "when working for" establishes such a condition. The question, instead, is whether the scope of the phrase "when working for" applies where, as here, a private entity is actively engaged as a government contractor at the same time as it allegedly collects biometric information. Here, Union Pacific maintained government contracts throughout the entire relevant time period. And even Plaintiffs' 62-word rewrite of the statutory text readily applies to the undisputed facts: Union Pacific allegedly collected Plaintiffs' finger scans "during the time that" or "while" it was "performing work" for local, state, and federal governmental agencies. Plaintiffs' own test resolves this motion in Union Pacific's favor.

Invoking the rule against superfluity, Plaintiffs next contend that Union Pacific's construction of Section 25(e) "improperly renders the language of limitation, 'when working for that State agency or local unit of government,' superfluous or meaningless." Opp. at 13. Not so. Had Section 25(e) said only that "[n]othing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government," there would be a risk that private entities who previously had active contracts—or had contracts that would become active only in the future—might seek shelter under Section 25(e) either after their contracts concluded or before they commenced. Thus, the phrase "when working for that State agency or local unit of

8

government" makes clear that the private entity must be an *active* or *current* government contractor. "That may not be very heavy work for a phrase to perform, but a job is a job, and enough to bar the rule against redundancy from disqualifying an otherwise sensible reading." *Polselli v. IRS*, 598 U.S. 432, 443 (2023) (quotations and citation omitted); *see also Atl. Richfield Co. v. Christian*, 590 U.S. 1, 14 n.5 (2020) (reasoning that legislatures sometimes "employ[] a belt and suspenders approach").

Plaintiffs next argue that "[i]f the [General Assembly's] intent had instead been to categorically exclude all private entities *who* worked as [sic] contractor, subcontractor, or agent … in any capacity, as opposed to *when* working in such capacity, it would have expressly said so or omitted the limiting phrase it included." Opp. at 12. This mischaracterizes Union Pacific's argument. Union Pacific does not argue that Section 25(e) applies because it was a government contractor at one point in time. Rather, Union Pacific argues that Section 25(e) applies because *at the time* it allegedly collected Plaintiffs' finger scans, it was otherwise actively performing work as a government contractor.

### 3. *Legislative Intent Does Not Support Plaintiffs*

Plaintiffs protest that nothing in BIPA's legislative history indicates that the General Assembly wanted to "afford every private entity … a categorical and complete exemption" under BIPA. Opp. at 14 (emphases omitted). But the Illinois Supreme Court has explained that "[o]nly if the statutory language is ambiguous may we look to other sources to ascertain the legislature's intent." *Cothron*, 216 N.E.3d at 924; *see also Krohe v. City of Bloomington*, 789 N.E.2d 1211, 1212 (Ill. 2003) ("Where the language is clear and unambiguous, we must apply the statute without resort to further aids of statutory construction.").

There is no ambiguity here. Section 25(e) straightforwardly exempts from BIPA's substantive requirements private entities "when [they are] working for" governmental entities as

9

government contractors. Plaintiffs object that such a straightforward reading would not be "sensible." Opp. at 15. But Plaintiffs' policy concerns play no role in "interpret[ing] the act[] as written." *See McDonald v. Symphony Bronzeville Park, LLC*, 193 N.E.3d 1253, 1269 (Ill. 2022) (quotations and citation omitted). If Plaintiffs believe BIPA enshrines an unfair result, they can of course ask the General Assembly to amend the statute. *See Cothron*, 216 N.E.3d at 929 ("Ultimately, . . . we continue to believe that policy-based concerns" regarding BIPA's interpretation "are best addressed by the legislature.").

Even if policy concerns were relevant, the General Assembly's decision to categorically exempt active government contractors makes good sense. As the Illinois Supreme Court held in *Cothron*, BIPA (the pre-amendment version) authorized astronomical damages awards by providing a cause of action for every scan or transmission of biometric information. 216 N.E.3d at 928 (noting that the plaintiffs could assert $17 billion in damages against White Castle).[3] If government contractors incur such costs, they will pass those costs along to the government in the form of higher rates for their government contracts. By exempting active state and local government contractors from liability, BIPA safeguards the public fisc and incentivizes private parties to enter agreements with governmental agencies.

\*   \*   \*

The government contractor exemption in Section 25(e) poses a straightforward question: Did Union Pacific collect finger scan data "during the same time that [Union Pacific] had a government contract and was a government contractor or subcontractor?" *Miranda*, No.

---

[3] The General Assembly has since amended Section 20, BIPA's damages provision, which now limits plaintiffs to "one recovery" for a "single violation" of BIPA when a private entity wrongfully collects or discloses a person's biometric information more than once using the same method. *See* Ill. Public Act 103-0769; 740 ILCS 14/20(b), (c). Union Pacific reserves the argument that this amendment to BIPA applies retroactively to limit the damages asserted here.

10

2021-CH-02127, Dkt. 68 at 44 (21:4-7). Plaintiffs concede that the answer to that question is yes. Given the undisputed facts, Section 25(e) entitles Union Pacific to summary judgment.

> C. **Even If Section 25(e) Required A Substantive Nexus In Addition To A Temporal Nexus, Plaintiffs Concede That Union Pacific's Contracts And Subcontracts Are Related To Operations At Its Intermodal Facilities, Thereby Establishing A Substantive Nexus**

Even if Section 25(e) requires a substantive nexus between Union Pacific's government contracts, on the one hand, and operations at the Illinois intermodal facilities where Plaintiffs' finger scans were taken, on the other, Union Pacific is entitled to summary judgment. Union Pacific's contracts with local and state entities "improve the efficient movement of freight throughout the greater Chicago region," and help to avoid "stoppages resulting from accidents at crossings" that "affect operations at Union Pacific's intermodal facilities"—the facilities "that Plaintiffs allegedly visited." Mot. at 12. As for Union Pacific's federal subcontracts, the goods that Union Pacific transported as a subcontractor for federal agencies like DOD and USPS "passed through the intermodal facilities at issue in this case." *Id.* In other words, Union Pacific's contracts with state and local governments, and its subcontracts with federal governmental entities, bear a direct substantive relationship to the very facilities that Plaintiffs allegedly visited and where their finger scans were collected. Thus, if the Court embraces the view that Section 25(e) requires some substantive connection between the collection of biometric information and existing government contracts, Union Pacific's contracts fit the bill.

Plaintiffs do not dispute any of this. They do not dispute that Union Pacific maintains local and state contracts to enhance efficiency, bolster safety, and otherwise improve the railroad system in the Chicago area—work that, in turn, allows for the smooth operation of the intermodal facilities that Plaintiffs visited. *See* Dkt. 76 ¶ 19 (admitting that "[t]he use of finger scans was intended to promote the efficiency, safety, and security of operations at the intermodal facilities"). Nor do

11

Plaintiffs dispute that the goods Union Pacific agreed to ship as a subcontractor for federal agencies passed through those very intermodal facilities. *See id.* ¶ 61 (admitting that "[t]he freight that Union Pacific handled as part of its federal subcontracts with DOD and other federal agencies passed through the same intermodal facilities at which Union Pacific used the finger scanning technology challenged by Plaintiffs"). Plaintiffs accordingly have forfeited any response to Union Pacific's contention that its local and state contracts and federal subcontracts bear a substantive nexus to the intermodal facilities at issue in this case. *See Nichols*, 755 F.3d at 600; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver."); *Wojtas v. Cap. Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007) (reasoning that the plaintiffs' "failure to offer any opposition" to defendant's "argument constituted a waiver").

      In an effort to forestall summary judgment, Plaintiffs point to the parties' stipulation that, "[w]hen Plaintiffs' fingers were scanned at Union Pacific's intermodal facilities, Plaintiffs were not performing work *pursuant to* the state or local government contracts cited in Union Pacific's Motion for Summary Judgment." Dkt. 71 ¶ 4 (emphasis added). Contrary to Plaintiffs' view, that stipulation is not "fatal" to summary judgment. Opp. at 2. For one thing, the stipulation is irrelevant to the question presented by this Motion: Whether Union Pacific served as a government contractor *at the time* that it allegedly collected Plaintiffs' biometric information. *See supra* at 2-3. For another, even if a substantive nexus is required to invoke Section 25(e), Plaintiffs cite no caselaw, statutory text, or any other authority to support their contention that Section 25(e) applies only if the plaintiff was working "pursuant to" a government contract when the plaintiff's biometric information was collected. *See* supra at 4-5.

      Plaintiffs also contend that Union Pacific "concedes that its government contracts *had no relationship* to its collection of Plaintiffs' fingerprints at its intermodal facilities and *pertained to*

12

*unrelated things* like warning signal devices, grade crossings, sharing rails with Metra, and hauling freight for the Department of Defense." Opp. at 6 (emphases added). That is incorrect. As the motion spells out and as Plaintiffs admit, Union Pacific's local and state contracts directly supported the efficient operation of the intermodal facilities at which Union Pacific collected Plaintiffs' finger scans. *See* Mot. at 12-13. And Plaintiffs could not possibly maintain that Union Pacific's work as a federal subcontractor was unrelated to its intermodal facilities, given that the federal shipments passed through those facilities. *See id.* at 14 (explaining that the freight Union Pacific hauled for federal agencies "passed through the intermodal facilities at issue in this case").

### III.  CONCLUSION

The Court should grant summary judgment to Union Pacific on the ground that it is exempt from BIPA under Section 25(e).

Dated: March 21, 2025

Respectfully submitted,

/s/ *Johanna Spellman*
Johanna Spellman, One of the Attorneys for
Defendant Union Pacific Railroad Company

Sean M. Berkowitz (Illinois Bar No. 6209701)
  sean.berkowitz@lw.com
Johanna Spellman (Illinois Bar No. 6293851)
  johanna.spellman@lw.com
Kathryn A. Running (Illinois Bar No. 6330369)
  kathryn.running@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

*Counsel for Defendant Union Pacific Railroad Company*

**CERTIFICATE OF SERVICE**

  I, Johanna Spellman, hereby certify that on March 21, 2025, I caused a copy of the foregoing to be filed using the Court's CM/ECF system, which provides service to all counsel of record.


Dated:  March 21, 2025          */s/ Johanna Spellman*
                     Johanna Spellman