IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Ernest Payton, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No. 24 C 153 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| Union Pacific Railroad Company, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs contend that Defendant Union Pacific Railroad Company collected their fingerprints in violation of the Illinois Biometric Information Privacy Act ("BIPA"). Union Pacific moves for summary judgment on the basis that it is exempt from BIPA claims. For the reasons stated below, the motion is denied.

**Legal Standard**

Summary judgment is appropriate if the movant "'shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014) (citing Fed. R. Civ. P. 56(a)). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "[S]peculation is not enough to create a genuine issue of fact for the purposes of summary judgment." *Tousis v. Billiot*, 84 F.4th 692, 696 (7th Cir. 2023) (citations omitted). The Court examines the record and draws all reasonable inferences in the light most favorable to the nonmovant. *Spurling*, 739 F.3d at 1060.

**Background**

As part of its freight railroad, Union Pacific operates intermodal facilities where freight is transferred between trains and trucks. R. 76 ¶¶ 4–5. From 2013 to 2021, Union Pacific relied on an automated gate system that used fingerprint scans to verify the identity of truck drivers who accessed Union Pacific's intermodal facilities in Illinois. *Id.* ¶ 18. Plaintiffs are a group of commercial truck drivers who contend that Union Pacific collected their fingerprints in violation of BIPA. *Id.* ¶¶ 21–24. In relevant part, BIPA provides: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." 740 ILCS 14/25(e). Union Pacific contends that it is categorically exempt from BIPA under § 25(e) because it had government contracts from 2013 to 2021. R. 65 at 12–13. Whether Union Pacific is exempt under § 25(e) is the sole issue in dispute on summary judgment. *Id.*

The following facts are relevant to Union Pacific's exemption argument. From 2013 to 2021, Union Pacific was a contractor for Metra (a municipal organization) and operated three of Metra's commuter trains. R. 76 ¶¶ 54–57. Also, from 2013 to 2021, Union Pacific participated in the Chicago Region Environmental and Transportation Efficiency ("CREATE") program, a public-private partnership to improve Chicago-area railroads that included the State of Illinois, various local governments, and railroad companies such as Union Pacific. *Id.* ¶¶ 25–26. As part of the CREATE program, Union Pacific entered a contract with the Illinois Department of Transportation ("IDOT") to perform design work related to bridges. *Id.* ¶ 29. Union Pacific entered additional contracts with IDOT from 2013 to 2021 to review engineering plans for a highway overpass near Edwardsville and to improve railroad crossings in Chicago, Martinton, Mason City, Mill Creek, St. Elmo, Steeleville, and Rankin. *Id.* ¶¶ 32–39. Finally, from 2019 through 2021,

Union Pacific was a subcontractor for federal agencies such as the U.S. Postal Services and the U.S. Department of Defense and transported shipments for these agencies, some of which passed through Union Pacific's intermodal facilities in Illinois. *Id.* ¶¶ 58–61.[1]

## Discussion

### I. Categorical Exemption

As stated above, the issue is whether Union Pacific is exempt from BIPA under § 25(e). When applying substantive state law, "[federal] courts sitting in diversity look first to the state's highest court for guidance." *Merner v. Deere & Co.*, 176 F. Supp. 2d 882, 885 (E.D. Wis. 2001). The Illinois Supreme Court, however, has not yet interpreted § 25(e). In this circumstance, absent "prevailing authority from the state's highest court, federal courts ought to give great weight to the holdings of the state's [] appellate courts and ought to deviate from those holdings only when there are persuasive indications that the highest court of the state would decide the case differently." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 637 (7th Cir. 2002). Absent clarifying authority from Illinois courts, federal courts may rely on principals of statutory interpretation, and "[b]ecause BIPA is an Illinois law, [federal courts] must apply Illinois' statutory interpretation rules." *Duerr v. Bradley Univ.*, 590 F. Supp. 3d 1160, 1168 (C.D. Ill. 2022). In Illinois, the "primary rule of statutory construction is to ascertain and give effect to the intent of the legislature, and the best evidence of legislative intent is the statutory language." *In re Hernandez*, 918 F.3d 563, 569 (7th Cir. 2019) (citations omitted). "Illinois law recognizes interpretive canons against surplusage and absurdity [and courts] must construe the statute so that each word, clause, and sentence, if possible, is given a reasonable meaning and not rendered superfluous." *Id.*

---

[1] Union Pacific asserts that it handled shipments for federal agencies prior to 2019 but "[d]ue to data retention limits, Union Pacific's records only reflect such shipments since 2019." R. 67-9 ¶ 3. As such, Union Pacific takes the position that it was a subcontractor for federal agencies starting in 2019. *See* R. 65 at 18.

Here, the Court and parties have identified just one decision by an Illinois appellate court that substantively addresses § 25(e)—*Enriquez v. Navy Pier, Inc.*, 2022 IL App (1st) 211414-U. The *Enriquez* Court explained that "an entity is exempt under section 25(e) if it is (1) a contractor (2) of a unit of government and (3) was working for that unit of government at the time it collected or disseminated biometric information." 2022 IL App (1st) 211414-U at ¶ 19. Critically, regarding whether the defendant "was working for that unit of government at the time it collected or disseminated biometric information," the *Enriquez* Court found that the defendant was exempt, because the violation of BIPA had been "within the scope" of the relevant contract with the unit of government. *Id.* ¶¶ 19–25.[2] In other words, under *Enriquez*, § 25(e) does not provide a categorical exemption for government contractors but rather, it requires a nexus between the BIPA violation and the scope of the defendant's work with the government.

In addition to *Enriquez*, the partes have identified three unpublished oral rulings on motions to dismiss before Illinois trial courts which address § 25(e). Two of those courts have suggested, similar to *Enriquez*, that there is not a categorical exemption for government contractors. *See* R. 75-2 at 8 (unpublished transcript from *Rojo v. Homer Tree Care, Inc.*, No. 23 L 8588 (Ill. Cir. Ct., Cook Cnty., Law Div., May 29, 2024) (distinguishing between the defendant's government contracts and private contracts)); R. 75-3 at 16 (unpublished transcript from *Navarette v. Josam*

---

[2] In *Enriquez*, the Metropolitan Pier and Exposition Authority ("MPEA") was a governmental entity that owned Navy Pier and that transferred operational responsibility for Navy Pier to the defendant Navy Pier, Inc. ("NPI") via a written agreement. 2022 IL App (1st) 211414-U, ¶¶ 8–10. Under the agreement, NPI was tasked with hiring and employing personnel to operate Navy Pier, and NPI collected the employees' biometric information as they clocked in and out. *Id.* ¶¶ 10–12. The *Enriquez* Court concluded that NPI "was working for the government" at the time it collected the biometric information because "NPI's actions that form the basis for the complaint were *within the scope* of its work for the MPEA." *Id.* ¶ 25 (emphasis added). Specifically, the plaintiff employee's claims "all stem[med] for her employment with NPI, which employed her as part of its obligation to operate and manage Navy Pier [and] NPI's authority to [employ her] arose from its contract with the MPEA." *Id.*

4

*Acquisitions*, No. 2019 CH 14368 (Ill. Cir. Ct. Mar. 29, 2021) ("[Section 25(e) does not exclude an employer like Defendant who only does some work for government via contractual obligations.")). One court found, however, that any government contractor was categorically exempt. *See* R. 75-4 at 9 (unpublished transcript from *Miranda v. Pexco, LLC*, No. 2021 CH 02127 (Ill. Cir. Ct., Chancery Div., Aug. 23, 2023) ("What does 'when working for' mean? And my finding is that that means that it is during the same period of time that plaintiff was working for the defendant. It does not mean while defendant is actively working on fulfilling the government contract or while plaintiff is working on that contract.")).

Here, in interpreting § 25(e), the Court follows *Enriquez*, *Rojo*, and *Navarette*, not only because these cases represent the weight of authority, but because they provide a more reasonable and commonsense reading of BIPA's plain language. As noted above, § 25(e) states: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government when working for that State agency or local unit of government." If the Illinois Legislature wished to categorically exempt all defendants who were government contractors, the Legislature would have only needed to include the first half of the sentence: "Nothing in this Act shall be construed to apply to a contractor, subcontractor, or agent of a State agency or local unit of government." Such language would categorically exempt any government contractor, regardless of whether the BIPA violation was within the scope of the defendant's work with the government. To read the entirety of § 25(e) as a categorical exemption thus renders the second half of § 25(e) superfluous. In turn, a reasonable reading of § 25(e) that does not render the second half superfluous is as follows: by including the language "when working for that State agency or local unit of government," the Legislature intended to require a nexus between the BIPA violation and the scope of the defendant's work with the government.

The Court further notes that a categorical exemption would lead to absurd results in which a large company with a single government contract would be categorically exempt from BIPA even when the company's BIPA violations were entirely unrelated to the contract. Indeed, the facts of this case highlight the absurdity. For example, from May 2017 to October 2017, Union Pacific entered into a contract with the Illinois Department of Transportation to improve a railroad crossing in Steeleville. R. 76 ¶ 35. Steeleville is a small town in southern Illinois, over three hundred miles away from the intermodal facilities in Chicago. The fact that Union Pacific improved a single railroad crossing in Steeleville is entirely unrelated to the collection of truck drivers' fingerprints at its intermodal facilities. To read § 25(e) as categorically exempting Union Pacific from BIPA for those six months of 2017 would be an absurd result.

For the reasons stated above, the Court finds that Union Pacific is not categorically exempt from BIPA under § 25(e). In turn, the critical question is as follows: when Union Pacific collected Plaintiffs' fingerprints, did that occur "within the scope" of Union Pacific's work as a government contractor?

## II. Within the Scope

The Court first addresses Union Pacific's contracts with Metra. Union Pacific argues that the Metra contracts are connected to the fingerprinting because the "rail lines used for Metra's commuter service are the same rail lines that bring freight in and out of Union Pacific's Chicago intermodal terminals." R. 65 at 11. But the mere fact of overlapping rail lines is insufficient to establish a nexus. The Metra contracts dealt with commuter trains while the truck drivers transported commercial goods. The fingerprint collection was not within the scope of the Metra contracts.

The Court next addresses Union Pacific's participation in the CREATE program and its contracts with IDOT. Union Pacific argues that the work performed "under these contracts is important to ensuring [that] railroad infrastructure and adjacent roadways are safe and well maintained, and to improving the efficiency of rail freight flows." R. 65 at 10. True, when Union Pacific makes improvements to railroad infrastructure, this creates efficiency gains that impact the system as a whole. But these contracts involved improvements to railroad crossings, bridges, and highway overpasses. When Union Pacific entered a contract with IDOT, for example, to fix a railroad crossing in Chicago or Steeleville, that contract was unrelated to fingerprint collection at the intermodal facilities. No reasonable person on either side of that contract—whether representing Union Pacific or IDOT—would believe that the contract somehow implicated fingerprint collection for commercial truck drivers. The fingerprint collection was thus not within the scope of the CREATE program or the IDOT contracts.

Finally, the Court addresses Union Pacific's work as a subcontractor for federal agencies, and the fact that shipments from these agencies passed through the intermodal facilities. As a preliminary matter, § 25(e) exempts a contractor or subcontractor "of a State agency or local unit of government." The threshold question is thus whether § 25(e) applies to Union Pacific's work as a *federal* subcontractor. If § 25(e) does apply, the fact that the shipments passed through the intermodal facilities (and may have ended up on the trucks) suggests a possible connection that warrants further investigation. Union Pacific filed its motion for summary judgment prior to the close of discovery, and the parties agreed to stay discovery pending the motion. R. 73. The Court finds that resolution of this final issue (regarding Union Pacific's work as a federal subcontractor) would be better resolved on a fully developed record at the conclusion of discovery. The parties may thus reraise this issue at the conclusion of discovery.

**Conclusion**

For the foregoing reasons, Union Pacific's motion [65] for summary judgment is denied. By 9/5/25, the parties shall file a joint status report setting forth: (A) whether the parties wish to engage in settlement discussions in light of the Court's ruling; and (B) a proposed schedule to resume and complete discovery.

**SO ORDERED.**                                          **ENTERED: August 25, 2025**

**HON. JORGE L. ALONSO**
**United States District Judge**